DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Wood County Court of Common Pleas which granted summary judgment to defendant-appellee the Home Savings Loan Company ("Home Savings") in an action filed by plaintiffs-appellants, Kimberly Y. and Joel C. Horen, regarding a construction dispute. Although appellants' brief cites six assignments of error for our consideration, in a decision and judgment entry dated April 26, 2004, we ordered that the first five assignments of error be stricken from appellants' brief. Accordingly, the only issue remaining for our review is that set forth in appellants' sixth assignment of error, which reads:
 {¶ 2} "The trial court erred in granting appellee Home Savings' motion for summary judgment."
 {¶ 3} In September 2000, Kimberly and Joel Horen ("the Horens") entered into a Portfolio Series Purchase Agreement with Summit Homes, a division of P S Management Group, Ltd. ("Summit Homes"), for the construction of a home at 20425 Green Road, Bowling Green, Ohio. Shortly thereafter, the Horens entered into a Construction Loan Agreement with Industrial Savings and Loan Association, the predecessor bank to defendant-appellee, the Home Savings Loan Co. ("Home Savings"), for the financing of the project. Under that agreement, the Horens placed the amount of the loan, $125,300, into a Home Savings construction loan account from which periodic payments would be made to cover the costs of construction. The Horens also executed a promissory note and mortgage in favor of Home Savings.
 {¶ 4} During the progress of the construction, and following the first and second inspections conducted for Home Savings to assess the progress of the construction, Joel Horen approved two draws from the construction loan account requested by Summit Homes. The first check was dated February 14, 2001, and was for $18,911; the second check was dated February 21, 2001, and was for $44,459. Shortly thereafter, a dispute arose between the Horens and Summit Homes, evidently prompted by electrical work which Joel Horen and his father-in-law, a licensed electrician, did on the home. After that dispute, the relationship between Summit Homes and the Horens deteriorated. In May 2001, the Horens, through their attorney, notified Summit Homes that they considered Summit Homes to be in material breach of the contract and that they had no other option but to hire another contractor to complete construction of their home. Thereafter, the Horens received a letter, dated June 6, 2001, from Michael J. Billmaier of the Wood County Department of Building Inspection, which notified them that the foundation of their front porch was cracked and did not pass inspection. Joel Horen also testified during a deposition that was submitted during the proceedings below of other problems that had become apparent with the house.
 {¶ 5} On November 2, 2001, the Horens filed a complaint against Summit Homes and Home Savings.[1] Against Summit Homes, the Horens' complaint alleged breach of contract, negligence, violations of the Consumer Sales Practices Act, fraud, and slander of title. The complaint also requested a declaratory judgment against Summit Homes regarding the validity of a mechanic's lien that Summit Homes had filed on the Horens' property and regarding the validity of an arbitration clause in the contract between the Horens and Summit Homes. Against Home Savings, the complaint alleged that Homes Savings was negligent in failing to inspect the home as required in the loan contract and that Home Savings converted the Horens' funds to its own use. The Horens also requested a declaratory judgment regarding the parties' rights and responsibilities under the note and the Horens' payment obligations given that Home Savings had not released the entire amount of the loan funds.[2]
 {¶ 6} Summit Homes filed a motion to require the Horens to submit the dispute to arbitration. On May 16, 2002, the trial court granted the motion and ordered a stay of proceedings pending the outcome of the arbitration. The arbitration ended in a $5,000 award in favor of the Horens. Subsequently, the trial court filed an order confirming the arbitration award and entering a judgment in favor of the Horens and against Summit Homes in the amount of $5,000.
 {¶ 7} On October 17, 2003, Home Savings filed a motion for summary judgment against the Horens. Home Savings asserted that as to the negligence claim, it had no duty at law to inspect the residence for the Horens' benefit and that it complied with its contractual obligations when it disbursed funds from the construction loan account after receiving the inspector's report of progress of completion. As to the Horens' claim for conversion, Home Savings asserted that because the Horens failed to comply with various provisions of the construction loan agreement, Home Savings was under no obligation to disburse additional funds. As to the Horens' claim for declaratory judgment, Home Savings asserted that such action was moot in that the Horens had, as of the time of the filing of the motion, paid in full their obligations to Home Savings under the promissory note. Finally, Home Savings asserted that any damages that the Horens incurred had already been judicially determined to be the responsibility of Summit Homes and the Horens had been awarded a $5,000 judgment in that regard. Accordingly, Home Savings argued that the Horens' claims for negligence and conversion were moot.
 {¶ 8} Home Savings supported its summary judgment motion with the affidavit of Richard Shafer, a Home Savings vice president, who attested that he made the affidavit on his personal knowledge and/or his review of business records which were attached to the affidavit and for which he was the custodian. Shafer's affidavit is summarized as follows: On or about September 27, 2000, the Horens executed and delivered to Home Savings an adjustable rate note in the original principal amount of $125,300 along with an open-end mortgage on the real estate described therein. Until November 1, 2001, the Horens were only required to make interest payments on the note. Thereafter, principal and interest payments were to commence on November 1, 2001, and were to continue monthly thereafter. Home Savings, however, agreed to a total of two, three month extensions of interest only payments. On or about September 27, 2000,[3] the Horens, Home Savings and Summit Homes entered into a construction loan agreement. During the course of the construction of the Horens' home, and following the first and second inspections conducted for Home Savings to assess the progress of completion, the Horens, by and through Joel Horen, approved through his signature on the reverse side of each check, two draws requested by Summit Homes. The first check dated February 14, 2001, was for $18,911; the second check dated February 21, 2001, was for $44,459. Subsequently, Home Savings was notified by the Horens that on May 16, 2001, Summit Homes was ordered off of the property, that the Horens no longer allowed Summit Homes to perform additional work and that the Horens' counsel formally fired Summit Homes and threatened criminal charges if Summit Homes entered the property. Summit Homes filed a mechanic's lien, making a claim for monies due and owing in the amount of $10,000. In light of the mechanic's lien placed on the property, the Horens were in breach of the construction loan agreement. It was then Home Savings' understanding that the Horens would take the steps necessary to remove the lien. This was conveyed to the Horens' counsel. Home Savings also requested that the Horens provide to the bank the requisite documentation for their replacement contractor. On or about October 19, 2001, the Horens presented Home Savings with a proposal from Silver Creek Builders for the completion of the project. The Silver Creek Builder's proposal exceeded the funds in the Horens' loan in progress account and Home Savings inquired of the Horens how this matter was to be addressed. Fourteen days later, the Horens filed suit.
 {¶ 9} The Horens filed a memorandum in opposition to Home Savings' summary judgment motion in which they challenged a number of factual statements made by Home Savings and Shafer. In particular, the Horens identified a number of statements made by Shafer in his affidavit which they claimed were misleading or false. The Horens, however, did not support their claim of falsity with any evidence to counter the affidavit. In particular, the Horens did not submit any evidence to counter Shafer's statement that the first and second draws from the construction loan account were approved following the first and second inspections conducted for Home Savings.
 {¶ 10} On December 15, 2003, the trial court issued an order and judgment entry granting Home Savings' summary judgment motion on all of the Horens' claims against it. It is from that judgment that the Horens now appeal.
 {¶ 11} Appellate review of a trial court's grant of summary judgment is de novo. Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105. Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. Of Commrs.
(1993), 87 Ohio App.3d 704, 711. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 66; Civ.R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v. Burt (1996), 75 Ohio St.3d 280, 294. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R 56(E).
 {¶ 12} The first claim on which the court granted Home Savings summary judgment was the tenth count of the Horens' complaint. That count alleged that pursuant to the construction loan agreement, Home Savings agreed that it would disburse $125,300 for a construction loan to a builder of the Horens' choosing in accordance with a delineated draw schedule; that Home Savings was to provide trained individuals to inspect the home for suitable workmanship prior to releasing monies periodically to Summit Homes during the construction process; that the Horens relied on Home Savings to adequately inspect the construction and progress of their residence; and that Home Savings negligently failed to provide any inspection of the construction of the Horens' residence and allowed monies to be paid to Summit Homes that should not have been paid. The complaint then alleged that because of Home Savings' negligence in failing to provide any inspection of the construction of their home, the Horens had been damaged in an amount in excess of $25,000. Finally, the tenth claim alleged that as a result of Home Savings' failure to inspect and to release the balance of the construction loan amount to a builder of the Horens' own choosing (after Summit Homes left the job), the circumstances were appropriate for an award of punitive damages in the amount of $500,000. Accordingly, the tenth cause of action appears to assert claims in negligence, breach of contract, improper disbursement of loan funds, and punitive damages.
 {¶ 13} We will first address the negligence claim. It is well established that "`* * * a party to [a] contract can only be liable in tort, in relation to the contract, where some positive duty imposed by law has been breached by the alleged negligent conduct of one of the parties to the contract.'" Nationwide Mut.Fire Ins. Co. v. Sonitrol, Inc. of Cleveland (1996),109 Ohio App.3d 474, 485, quoting Am. States Ins. Co. v. Honeywell, Inc.
(Mar. 1, 1990), 8th Dist. No. 56552. "* * * [T]he mere omission to perform a contract obligation is never a tort unless the omission is also the omission to perform a legal duty." Bowmanv. Goldsmith Bros. Co. (App. 1952), 63 Ohio Law Abs. 428, 431. "* * * [W]illful or wanton misconduct on the part of a party to a contract, [however,] can result in the imposition of tort liability." Am. States Ins. Co., supra, citing Royal Indemn.Co. v. Baker Protective Services, Inc. (1986),33 Ohio App.3d 184;Hine v. Dayton Speedway Corp. (1969), 20 Ohio App.2d 185.
 {¶ 14} In the present case, the only relationship between the parties was that established by the construction loan agreement and Home Savings owed no duty to the Horens outside of those duties set forth in the contract. Accordingly, the trial court did not err in granting Home Savings summary judgment on the Horens' claim for negligence.
 {¶ 15} In an action based on contract, traditional concepts of contract interpretation apply and control our consideration of this case. "The cardinal purpose for judicial examination of any written instrument is to ascertain and give effect to the intent of the parties. Aultman Hosp. Assn v. Community Mut. Ins. Co.
(1989), 46 Ohio St.3d 51, 53 * * *. `The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement.' Kelly v. Med. Life Ins. Co. (1987),31 Ohio St.3d 130, * * * paragraph one of the syllabus. `Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument.' Alexander v. Buckeye Pipe Line Co.
(1978), 53 Ohio St.2d 241, * * * paragraph two of the syllabus.'"Foster Wheeler Enviresponse, Inc. v. Franklin Cty. ConventionFacilities Auth. (1997), 78 Ohio St.3d 353, 361.
 {¶ 16} The Horens have set forth numerous arguments in support of their contention that the trial court erred in granting Home Savings summary judgment on their breach of contract claim. All of their arguments, however, are dependent on their assertion that Home Savings owed them a duty under the construction loan agreement to inspect the home and step in to cure defects in the construction of the home if it found such defects during said inspection. Upon a review of the construction loan agreement itself, we cannot find that Home Savings owed the Horens that duty. The agreement was signed by the Horens, as the owners of the subject property, and by a representative of Summit Homes, as the contractor. It then states that the undersigned (i.e., the Horens and Summit Homes) "expressly covenants with [Home Savings] * * * and agrees in consideration of the granting of a loan by [Home Savings], to do and perform the following acts and things:
 {¶ 17} "SECTION 1.
 {¶ 18} "* * *
 {¶ 19} "3. To erect and complete, free from all mechanics' liens, and in compliance with building restrictions and ordinances, within 12 months, a building costing not less than $159,740.00, in accordance with plans and specifications submitted herewith, dated as of this day and signed by the undersigned.
 {¶ 20} "* * *
 {¶ 21} "5. To furnish the Association's inspector with a set of plans and specifications bearing same date as this agreement, and to give him the right, during construction of the building, to inspect the same and to reject and require to be replaced any material or workmanship that does not comply with the plans and specifications.
 {¶ 22} "* * *
 {¶ 23} "SECTION 2.
 {¶ 24} "It is further understood:
 {¶ 25} "1. That [Home Savings] is authorized to disburse funds under its control in said construction loan account, together with the net proceeds of the loan, only in proportion to its inspector's report of progress, or by Architect's or Superintendent Certificate accompanied by a proper affidavit from the contractor.
 {¶ 26} "* * *
 {¶ 27} "3. That [Home Savings] may, at any time, without consent of the undersigned, if in its opinion it becomes necessary so to do, pay bills and/or complete said building or buildings in accordance with plans and specifications, etc., on file with it, using for such purposes, including therein the unexpected net proceeds of his loan, upon which funds [Home Savings] shall have a first lien for any one or more such purposes, but nothing herein contained shall be in any wayconstrued as a covenant on [Home Savings'] part to so pay orcomplete.
 {¶ 28} "* * *
 {¶ 29} "6. The owner has accepted, and hereby accepts the sole responsibility for the selection of his own contractor and contractors, all materials, supplies and equipment to be used in the construction, and [Home Savings] assumes no responsibility for the completion of said building, or buildings, according to the plans and specifications and for the contract price. In the event that the funds on hand are found to be insufficient to erect the building and complete the same in accordance with the plans and specifications and any agreed extras, the owner shall place and hereby agrees to place such additional funds in his construction loan account as may be necessary to complete the building or buildings, according to such plans and specifications, plus any extras authorized by him." (Emphasis added.)
 {¶ 30} As is clear from the express language of the contract emphasized above, Home Savings owed the Horens no obligation to complete the building of the home at any time. Indeed, the construction loan agreement specifically states that nothing in the agreement "shall be in any way construed as a covenant on [Home Savings'] part to so * * * complete." The agreement further provides at Section 2.6 of the agreement that it is the Horens' responsibility to select the contractor, and Home Savings "assumes no responsibility for the completion of the building."
 {¶ 31} The Horens also appear to argue that Home Savings had an obligation to inspect the home for defects during the construction and to assure that the home was built in accordance with the plans and specifications. Home Savings' only obligation under the agreement with regard to inspections, however, was to disburse funds under its control in the construction loan account in proportion to its inspector's report of progress. Summit Homes and the Horens were obligated under Section 1.5 of the agreement to give Home Savings' inspector the right to inspect the construction and to reject or require replacement of any material or workmanship that the inspector determined did not comply with the plans and specifications, but Summit Homes and the Horens were responsible for seeing that the home was constructed in accordance with the plans and specifications. In his affidavit, Shafer stated that the first and second inspections were conducted prior to the disbursement of construction funds on February 14, 2001, and February 21, 2001. The Horens did not counter this evidence with any evidence of their own that would suggest that the inspections were improperly done. Moreover, from the record, it appears that the cracks in the home's foundation were not discovered until the May 11, 2001 inspection.
 {¶ 32} Based on the evidence submitted to the court below, it is clear that Home Savings did not breach any contractual duty to the Horens and that it was entitled to judgment as a matter of law on the Horens' breach of contact claim.
 {¶ 33} As to the Horens' claim for improper disbursement of loan funds, R.C. 1311.011(B)(5) provides that a lending institution's liability for improper disbursement of loan funds to a contactor is limited to instances of gross negligence or fraud. See Tanoh v. Strawbridge (May 18, 2000), 8th Dist. No. 76094. Gross negligence is defined as the "failure to exercise any or very slight care" or "failure to exercise even that care which a careless person would use." Thompson Electric, Inc. v.Bank One, Akron, N.A. (1988), 37 Ohio St.3d 259, 265, citingJohnson v. State (1902), 66 Ohio St. 59, 67, and Prosser 
Keeton, Law of Torts (5 Ed. 1984) 212, Section 34. Nothing in the evidence submitted to the court below could lead reasonable minds to conclude that Home Savings was grossly negligent or fraudulent in disbursing the loan funds and Home Savings was clearly entitled to summary judgment on this claim.
 {¶ 34} The final claim the Horens asserted in their tenth cause of action was a claim for punitive damages. R.C. 2315.21(B) permits an award of punitive damages in a tort action where the actions or omissions of a defendant demonstrate actual malice and the plaintiff proves actual damages as a result of those actions or omissions. As the Horens had no recognizable cause of action in tort, they further had no right to punitive damages.
 {¶ 35} In their eleventh cause of action, the Horens asserted a claim for conversion against Home Savings. The Horens averred that by failing to release the remainder of the funds in the construction loan account to a builder of the Horens' choosing to allow the completion of the home, Home Savings had converted the Horens' money to its own use in that the Horens were to begin making monthly mortgage payments on the entire loan as of November 1, 2001.
 {¶ 36} Initially we note that it is undisputed that although the principal and interest payments on the Horens' note with Home Savings were to begin on November 1, 2001, Home Savings agreed to two three month extensions of interest payments only. Regardless, "conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights."Joyce v. Gen. Motors Corp. (1990), 49 Ohio St.3d 93, 96. The construction loan agreement provided that Home Savings was to disburse funds under its control only in proportion to its inspector's report of progress. It further provided that the proceeds of the loan were to be used for the payment of "material, bills, labor and for other uses and purposes in and for the construction of" the home. The agreement then provided in Section 2.6 that "[i]n the event that the funds on hand are found to be insufficient to erect the building and complete the same in accordance with the plans and specifications * * * [the Horens] shall place and hereby agrees to place such additional funds in [the] construction loan account as may be necessary to complete the building or buildings, according to such plans and specifications * * *."
 {¶ 37} It is not clear to whom the Horens assert Home Savings was to release the funds remaining in the construction loan account. The agreement specifies that Home Savings is only to release the funds in the account to pay for materials and labor, etc, in the construction of the home. Nevertheless, Joel Horen testified that after the Horens fired Summit Homes from the job, they were unable to hire a replacement contractor to complete the home. Although the Horens did at one time enter into an agreement with Silver Creek Builders to finish the building, that company backed out of the job. Accordingly, there was no evidence submitted to the court below that Home Savings wrongfully exercised dominion or control over the Horens' property and the trial court did not err in granting Home Savings summary judgment on the Horens' claim for conversion.
 {¶ 38} Finally, the trial court granted Home Savings summary judgment on the Horens' claim for declaratory judgment. The Horens, however, have not specifically challenged this ruling in their brief and, therefore, we need not address it here. App.R. 12.
 {¶ 39} Accordingly, given the undisputed facts presented to the trial court, and construing those facts in a light most favorable to the Horens, reasonable minds could only conclude that Home Savings was entitled to judgment as a matter of law and the trial court did not err in granting Home Savings summary judgment on all of the Horens' claims against it. The sole assignment of error is not well-taken.
 {¶ 40} On consideration whereof, the court finds that substantial justice has been done the parties complaining and the judgment of the Wood County Court of Common Pleas is affirmed. Appellants are ordered to pay the court costs of this appeal pursuant to App.R. 24.
Judgment Affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Pietrykowski, J., Lanzinger, J. Concur.
[1] Although the Horens' complaint was actually filed against the predecessor bank to Home Savings, for the sake of simplicity we will call the defendant-appellee Home Savings throughout this decision.
[2] Home Savings filed a cross-claim against Summit Homes for indemnification and Summit Homes filed a seven count counterclaim against the Horens for breach of contract, unjust enrichment, conversion, anticipatory breach of contract, misappropriation of trade secrets, breach of duty of good faith and fair dealing, and detrimental reliance. Those claims, however, were disposed of by the trial court and are not at issue in this appeal.
[3] In his affidavit, Shafer states that the construction loan agreement was entered into on September 27, 2001. In their memorandum in opposition to the summary judgment motion, the Horens challenge Shafer's statement as "clearly false" and misleading. All of the documents before the trial court and this court clearly show that the agreement was entered into on September 27, 2000, and we take Shafer's misstatement as simply that or a typographical error and find nothing misleading about it.