WILLIAMS, Appellant, et al.,

v.

GANNETT SATELLITE INFORMATION NETWORK, INC.,
d/b/a The Cincinnati Enquirer et al., Appellees.

[Cite as *Williams v. Gannett Satellite Information Network, Inc.*, 162 Ohio App.3d 596, 2005-Ohio-4141.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040635.

Decided Aug. 12, 2005.

Lawson & Associates and Kenneth L. Lawson, for appellant.

Graydon Head & Ritchey, L.L.P., John C. Greiner, John A. Flanagan, and Katherine M. Lasher, for appellees Gannett Satellite Information Network, Inc., d.b.a. The Cincinnati Enquirer and Jane Prendergast.

Julia L. McNeil, Cincinnati City Solicitor, and Geri Hernandez Geiler, Senior Assistant City Solicitor, for appellees city of Cincinnati and John Does 1–5.

SUNDERMANN, Judge.

{¶ 1} Plaintiff-appellant, Clarence Daryl Williams III, appeals the judgment of the trial court that dismissed his complaint against defendants-appellees Gannett Satellite Information Network, Inc., d.b.a. The Cincinnati Enquirer ("Gannett"), Jane Prendergast, the city of Cincinnati, and John Does 1 through 5, who are Cincinnati police officers.[1] For the reasons that follow, we reverse the judgment of the trial court in part.

{¶ 2} On September 28, 2002, the Cincinnati Enquirer published an article written by Jane Prendergast. The article was about the arrests of two men and two juveniles. One of the men arrested was Deangelo Williams. The article stated, "[Deangelo Williams] is the son of former Cincinnati officer, Clarence Williams, a former president of the Sentinels black-officers group. He is legally prohibited from having a gun because he has a previous conviction for selling drugs." Deangelo Williams is not the son of Clarence Williams.

{¶ 3} Clarence Williams III, his son Clarence Williams IV, his ex-wife, Caralyn Williams, and his mother, Evelyn Williams, filed defamation and intentional-infliction-of-emotional-distress claims against Gannett, Prendergast, the city, and five unnamed police officers who allegedly told Prendergast that Deangelo Williams was the son of Clarence Williams III. The trial court granted the defendants' motions to dismiss pursuant to Civ.R. 12(B)(6).[2]

{¶ 4} A motion to dismiss for failure to state a claim is properly granted when it appears beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery.[3] All factual allegations made in the complaint must be presumed true, and all reasonable inferences must be resolved in favor of the nonmoving party.[4]

{¶ 5} Williams's brief assigns error concerning only the trial court's conclusion about his defamation claim. In order to survive a motion to dismiss, Williams

1. Although Williams's brief raises assignments of error concerning plaintiffs Clarence Daryl Williams IV, Caralyn Williams, and Evelyn Williams, we note that the notice of appeal states that only Clarence Daryl Williams III is appealing the trial court's judgment. The arguments of the other plaintiffs are therefore not before us. See *Seipelt v. Motorist Mut. Ins. Co.* (1992), 81 Ohio App.3d 530, 611 N.E.2d 917.

2. The case was before this court earlier under case No. C–030480. We dismissed that appeal, pursuant to Civ.R. 54(B), because the trial court had not entered judgment in favor of Cincinnati and the police officers. Williams filed his second appeal after the trial court entered judgment in favor of Cincinnati and the police officers.

3. *O'Brien v. Univ. Community Tenants Union, Inc.* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus.

4. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 192, 532 N.E.2d 753.

had to allege the elements of defamation: (1) a false and defamatory statement concerning Williams, (2) publication of the statement, (3) fault, and (4) harm.[5] The appellees did not dispute that the statement concerning Williams was false or that the statement was published—first by the police officers to Prendergast and then by the Gannett appellees to the general public in the newspaper article. At issue in this appeal is the degree of fault and the harm or damages that Williams needed to allege in his complaint.

{¶ 6} Although framed as whether the statement was "of and concerning" Clarence Williams IV, Williams's first assignment of error addresses the issue of the harm alleged.

{¶ 7} A defamatory statement can be one of two types—defamatory per quod or defamatory per se. A defamatory-per-quod statement is one that is determined to be defamatory by the interpretation of the listener.[6] If a complaint alleges defamation per quod, the plaintiff must allege special damages.[7] Williams did not allege special damages. Instead, he alleged that the statement was defamatory per se, or defamatory on its face. When a complaint alleges defamation per se, damages are presumed.[8] The trial court concluded that the statement in question was not defamatory per se.

{¶ 8} In order to be considered defamatory per se, the words used in the statement must fall in one of three categories: (1) the imputation of a charge of an indictable offense involving moral turpitude or infamous punishment, (2) the imputation of some offensive or contagious diseases calculated to deprive the person of society, or (3) having the tendency to injure the plaintiff in his trade or occupation.[9] When, as here, the words are unambiguous, whether the words are defamatory per se is a matter of law.[10]

{¶ 9} Gannett and the city focused on the first category—imputation of a charge of an indictable offense. The parties cite multiple cases from jurisdictions outside Ohio for the proposition that a mere allegation that a person is related to

---

5. *Young v. Russ*, 11th Dist. No. 2003–L–206, 2005-Ohio-3397, 2005 WL 1538103, at ¶ 28.

6. *McCartney v. Oblates of St. Francis deSales* (1992), 80 Ohio App.3d 345, 353, 609 N.E.2d 216.

7. Id.

8. Id. at 354, 609 N.E.2d 216.

9. *Schoedler v. Motometer Gauge & Equip. Corp.* (1938), 134 Ohio St. 78, 84, 11 O.O. 487, 15 N.E.2d 958, citing *Davis v. Brown* (1875), 27 Ohio St. 326

10. *Becker v. Toulmin* (1956), 165 Ohio St. 549, 60 O.O. 502, 138 N.E.2d 391, paragraph one of the syllabus.

a criminal is not generally defamation per se.[11] We need not determine whether an allegation of a relationship to a criminal can never be defamation per se. Instead, we conclude that the analysis is properly focused on whether the statement in this case fell within the third category—whether the statement would tend to injure Williams in his trade or occupation.

{¶ 10} A statement that a police officer's son is a criminal reflects negatively on the police officer's professional ability. That Williams's son was arrested carrying a weapon while under a disability and that his son had a previous conviction for selling drugs would tend to affect Williams's opportunity for advancement. Gannett and Prendergast clearly believed that Williams's positions as a former Cincinnati police officer and former president of the Sentinels were relevant to a story that was otherwise about the arrest of four individuals. The trial court stated that any effect the statement may have had on Williams's career advancement was purely speculative. But in order to be found defamatory per se, the statement needed only to *tend* to injure Williams in his trade or occupation. To require that he have alleged actual career harm would be to require the proof of special damages associated with defamation per quod.

{¶ 11} Because the trial court erred in concluding that the statement was not defamatory per se, the first assignment of error is sustained.

{¶ 12} Williams's second assignment of error challenges the trial court's conclusion that Williams was a public figure. If Williams was a public figure, he had to allege actual malice to survive a motion to dismiss. The trial court concluded that Williams was a public figure, but it also concluded that Williams had properly alleged actual malice. Thus, the claim was not dismissed on this ground. Because our conclusion with respect to the first assignment of error is sufficient to reverse the trial court's judgment, its decision that Williams was a public figure is not moot. Whether Williams has to prove actual malice will affect his claim going forward, as it may be difficult to prove that Gannett knew the statement was false but published it anyway.

{¶ 13} In *Soke v. The Plain Dealer*, the Ohio Supreme Court considered whether a police officer who testified during the trial of his nephew was a public official for defamation purposes.[12] The court recognized that the United States Supreme Court has repeatedly held that police officers are public officials.[13] The

---

11. See, generally, *Torres–Silva v. El Mundo* (1977), 106 D.P.R. 415, 3 Med.L.Rptr. 1508, 1977 WL 50788; *Bufalino v. Associated Press* (C.A.2, 1982), 692 F.2d 266; *Jones v. Taibbi* (1987), 400 Mass. 786, 512 N.E.2d 260.

12. *Soke v. The Plain Dealer* (1994), 69 Ohio St.3d 395, 632 N.E.2d 1282.

13. Id. at 397, 632 N.E.2d 1282, citing *New York Times Co. v. Sullivan* (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686; *Henry v. Pearson* (1965), 380 U.S. 356, 85 S.Ct. 992, 13 L.Ed.2d

court went on to determine whether, in light of the conclusion that the police officer was a public official, statements made about him were constitutionally protected. Because the statements made might have reflected on his fitness for office, the court held that they were constitutionally protected and that the police officer needed to prove actual malice.[14]

{¶ 14} Similarly, as we determined with respect to the first assignment of error, the statement made about Williams tended to reflect on his fitness for office. Under the reasoning of *Soke*, to succeed on his defamation claim, Williams had to prove actual malice on the part of Gannett and the unnamed police officers. The second assignment of error is overruled.

{¶ 15} Williams's final assignments of error concern whether the statement in the article was "of and concerning" Williams, Clarence Williams IV, Caralyn Williams, and Evelyn Williams. There is no question that the statement was about Williams. He was mentioned by name in the statement. The trial court did not conclude otherwise. But the trial court concluded that the article was not "of and concerning" Clarence Williams IV, Caralyn Williams, and Evelyn Williams. Because only Clarence Williams III has appealed the trial court's judgment, the assignments of error with respect to the other defendants are not properly before us. Therefore, we overrule the third and fourth assignments of error.

{¶ 16} Because we conclude that the first assignment of error is well taken with respect to Williams's defamation claim, we reverse the trial court's judgment only as to that claim and remand this cause for further proceedings in accordance with law.

Judgment reversed in part
and cause remanded.

PAINTER, P.J., and HENDON, J., concur.

---

892; *St. Amant v. Thompson* (1968), 390 U.S. 727, 88 S.Ct. 1323, 20 L.Ed.2d 262; *Time, Inc. v. Pape* (1971), 401 U.S. 279, 91 S.Ct. 633, 28 L.Ed.2d 45.

**14.** Id. at 398, 632 N.E.2d 1282. See, also, *Garrison v. Louisiana* (1964), 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125.