OPINION
{¶ 1} Richard Mark Wilson appeals from a judgment of the Montgomery County Court of Common Pleas, which granted summary judgment in favor of his former wife, Tammie Wilson, on his claims for defamation, defamation per se, assault, and intentional infliction of emotional distress.
 {¶ 2} After meeting over the Internet and engaging in a short courtship, Richard and Tammie married in July 2000. Richard was a citizen of the United Kingdom, and Tammie was a U.S. citizen. Their marriage apparently enabled Richard to live in the United States. Tammie claimed that she learned "several disturbing things" about Richard during the first months of the marriage. These discoveries included the fact that Richard had recently divorced another American woman whom he had met over the Internet after a short-term marriage and that, in the prior divorce proceedings, Richard had been accused of sexually abusing his step-children. In March 2001, a child was born of the marriage, and Tammie filed for divorce.
 {¶ 3} Richard filed a complaint against Tammie in June 2003. Their divorce was still pending at this time. Richard's claims for defamation and defamation per se allegedly arose from a telephone conversation in which Richard's priest attempted to counsel the couple about their marital difficulties. During this conversation, Tammie allegedly accused Richard of being a pedophile and of viewing child pornography on their computer. Richard asserted that she had made this accusation to one of his family members as well. Richard's claim for intentional infliction of emotional distress related to the same conduct, asserting that Tammie's conduct in accusing him of pedophilia was "extreme and outrageous" and caused him emotional and psychological damage. The assault allegation related to Richard's claim that Tammie had put bullets in some of the belongings he retrieved from the marital home, which made him feel that his life was being threatened. Richard sought both compensatory and punitive damages.
 {¶ 4} In September 2004, Tammie filed a motion for summary judgment on all of Richard's claims. She relied on Richard's deposition and her own affidavit in asserting that her conversation with the priest had been privileged, that Richard had shown no damages as a result of her alleged defamatory statements, that her conduct had not been outrageous, and that she had not committed an assault.
 {¶ 5} In his response to the motion for summary judgment, Richard, who acted pro se at this point, complained about Tammie's alleged failure to cooperate with discovery. He also pointed to a variety of actions that Tammie could have taken to create a genuine issue of material fact, if she had chosen to do so, instead of "suppressing evidence." For example, he asserted that Tammie should have deposed the priest if she wanted to know what he would say about their conversations and that she should have subpoenaed his medical records if she questioned his claims about emotional distress. Richard did not provide any documentary evidence of the type permitted by Civ.R. 56(C) in response to Tammie's motion for summary judgment.
 {¶ 6} On December 30, 2005, the trial court granted summary judgment in favor of Tammie on all of Richard's claims. With respect to defamation and defamation per se, the trial court concluded that Richard had failed to prove any damages because of Richard's admission that the people who allegedly heard Tammie's statements did not believe the allegations against him and due to his denial of any adverse impact on his career. In concluding that he had failed to create a genuine issue as to the assault, the trial court relied on Richard's decisions to voluntarily spend time alone with Tammie after he had allegedly found the bullets in his belongings, concluding that he had not been in fear of Tammie. With respect to the intentional infliction of emotional distress claim, the trial court concluded that the alleged conduct was "neither extreme nor outrageous enough to be considered as going beyond all possible bounds of decency," as required to establish such a claim.
 {¶ 7} Richard appeals, pro se, from the trial court's judgment. His "motion to set aside order" fails to comply with the requirements of App.R. 16 in numerous respects, including the absence of assignments of error and issues presented for review. However, we glean from this document that Richard objects to every aspect of the trial court's decision, and we will attempt to address his arguments in turn.
 {¶ 8} Our review of the trial court's decision to grant summary judgment is de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997),123 Ohio App.3d 158, 162, 703 N.E.2d 841. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel.Grady v. State Emp. Relations Bd., 78 Ohio St.3d 181, 183,1997-Ohio-221, 677 N.E.2d 343. The moving party "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claim." Dresher v. Burt, 75 Ohio St.3d 280, 293,1996-Ohio-107, 662 N.E.2d 264. If the moving party satisfies its initial burden, "the nonmoving party then has a reciprocal burden * * * to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id.; see Civ.R. 56(E).
 {¶ 9} With respect to the defamation claims, Richard's primary argument seems to be that Tammie thwarted his efforts to develop his claim by failing to provide the discovery that he requested. The only discovery dispute in which Richard asked the trial court to intervene related to his efforts to obtain a copy of the report sent to Tammie by a private investigator that she had hired in Great Britain. Tammie apparently did not have a copy of the document at the time of the request because it had been sent to her electronically, and her computer had since crashed. The trial court ruled that it lacked jurisdiction to order a foreign private detective to release reports. Other issues, such as Tammie's alleged failure to answer interrogatories relating to sexual abuse by her former husband and to her psychological treatment, are unsubstantiated by the record. Moreover, the information requested in these interrogatories was of questionable relevance for purposes of summary judgment. Thus, we find no merit to Richard's claim that incomplete discovery prohibited him from defending against Tammie's motion for summary judgment.
 {¶ 10} On the issue of defamation, Tammie alleged in her motion for summary judgment that Richard had failed to create a genuine issue of material fact as to defamation because Richard had not alleged any damages, considering that neither his priest nor his family had believed her claim that he was a pedophile. She asserted that Richard had filed the claim in retaliation for the court's order of supervised visitation with their daughter. Further, she contended that her communication with the priest was privileged and that she did not intend to waive the privilege.
 {¶ 11} The trial court did not address the claimed privilege. Rather, it based its conclusion upon Richard's failure to substantiate any damages. The court described Richard's response to the motion for summary judgment as "a collection of unsupported conclusory statements * * *[that were] insufficient to challenge facts properly supported by an affidavit or other acceptable form of evidence." Although the trial court's reasoning asto compensatory damages is, for the most part, valid, we will briefly expand upon it.
 {¶ 12} To prevail on a claim of defamation, the evidence must establish (1) a false and defamatory statement concerning the plaintiff; (2) publication of the statement; (3) fault; and (4) harm. Earl v.Nelson, Lorain App. No. 04CA8622, 2006-Ohio-3341, ¶ 24; Williams v.Gannett Satellite Information Network, Inc., 162 Ohio App.3d 596,2005-Ohio-4141, 834 N.E.2d 397, ¶ 5. To constitute defamation per se, the statement must fall into one of several specific categories, which include the imputation of a charge of an indictable offense involving moral turpitude or infamous punishment. Williams at ¶ 8, citingSchoedler v. Motometer Gauge Equip. Corp. (1938), 134 Ohio St. 78, 84,15 N.E.2d 958. In all other cases, the defamatory nature of the statement must be determined by the interpretation of the listener. Id. at ¶ 7. In the case of defamation per se, damages are presumed. Id.;Strussion v. Akron Beacon Journal Publishing Co., Summit App. No. 20833, 2002-Ohio-3200, at ¶ 21; Murray v. Knight-Ridder, Inc., Belmont App. No. 02BE45, 2004-Ohio-821, at ¶ 16. In all other cases of defamation, the plaintiff must plead and prove special damages. Williams at ¶ 8;Strussion at ¶ 21; Murray at ¶ 16.
 {¶ 13} Richard's claim, if proven, constituted defamation per se because the assertion of pedophilia involves a charge of moral turpitude and is an indictable offense. As such, Richard's failure to allege special damages, in itself, did not entitle Tammie to summary judgment on that claim, as the trial court seems to have concluded. Damages should have been presumed. Williams, 162 Ohio App.3d at ¶ 8;Strussion, 2002-Ohio-3200, at ¶ 21; Murray, 2004-Ohio-821, at ¶ 16.
 {¶ 14} Legal presumptions are rebuttable, however.[1] Tammie offered Richard's deposition to refute his claim that he had been entitled to compensatory damages for the alleged defamation. In his depostion, Richard admitted that the people to whom Tammie had communicated the allegation of pedophilia had not believed it. He also admitted that he had suffered no adverse consequences at work, although it is unclear whether anyone at work even knew of the allegation. For purposes of summary judgment on Richard's claim for compensatory damages arising from the alleged defamation, this evidence satisfied Tammie's "initial burdenof informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." Dresher, 75 Ohio St.3d at 293. Accordingly, Richard had "a reciprocal burden * * * to set forth specific facts showing that there [was] a genuine issue for trial * * *." Id.
 {¶ 15} Richard failed to meet his reciprocal burden by substantiating any compensatory damages arising from the alleged defamation. He presented no evidence that is allowed under Civ.R. 56(C) for purposes of summary judgment. The trial court aptly described Richard's response to the motion for summary judgment as "a collection of unsupported conclusory statements * * * [that were] insufficient to challenge facts properly supported by an affidavit or other acceptable form of evidence." As such, summary judgment on the defamation claim was appropriate with respect to compensatory damages. Tammie rebutted the presumption of compensatory damages, and Richard failed to show that there was a genuine issue for trial on this issue.[2]
 {¶ 16} In discussing Tammie's motion for summary judgment, neither the parties nor the trial court specifically addressed Richard's claim for punitive damages arising from the alleged defamation. Actual malice is required to collect punitive damages in a tort action, and it has been defined as anger, hatred, ill will, a spirit of revenge, or a reckless disregard of the consequences or the legal rights of others. Leal v.Holtvogt, 123 Ohio App.3d 51, 82, 702 N.E.2d 1246. (Citations omitted.) Arguably, Richard's affidavit created a genuine issue of material fact as to whether Tammie had acted with actual malice in calling him a pedophile and a viewer of child pornography. However, even where actual malice has been established, punitive damages cannot be awarded in the absence of actual damages. R.C. 2315.21(B) and (C); Burns v. PrudentialSecurities, Inc., 167 Ohio App.3d 809, 2006-Ohio-3550, 857 N.E.2d 621, ¶ 99;Mabry-Wright v. Zlotnik, 165 Ohio App.3d 1, 2005-Ohio-5619,844 N.E.2d 858, ¶ 20; Horen v. Summit Homes, Wood App. No. WD-04-001,2004-Ohio-6656, ¶ 34. Accordingly, summary judgment on the claim for punitive damages necessarily flowed from the summary judgment on actual damages.
 {¶ 17} The claim of intentional infliction of emotional distress is based on the same statements by Tammie as the defamation claims, namely, the allegations of pedophilia and use of child pornography. Richard claimed that Tammie's accusations resulted in severe emotional distress and injury to him.
 {¶ 18} In Ohio, the plaintiff must satisfy four elements to succeed on a claim for intentional infliction of emotional distress: 1) that the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff; 2) that the actor's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community; (3) that the actor's actions were the proximate cause of the plaintiff's psychic injury; and (4) that the mental anguish suffered by plaintiff is serious and of a nature that no reasonable man could be expected to endure it.Pathan v. Pathan, Montgomery App. No. 20926, 2006-Ohio-43, at ¶ 31-32. Extreme and outrageous conduct is conduct that "has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Wenzel v. Al Castrucci, Inc.
(June 18, 1999), Montgomery App. No. 17485, quoting Yeager v. LocalUnion 20 (1987), 6 Ohio St.3d 369, 374-375, 453 N.E.2d 666.
 {¶ 19} The trial court found that there was no genuine issue of material fact as to whether Tammie's alleged statements were so extreme and outrageous as to go beyond all possible bounds of decency. The court observed: "[T] here was a single, private conversation among the parties to this dispute and their priest in regard to the possibility of reconciliation. * * * Plaintiff presents no evidence that the alleged damaging statements were made at any other time or to any other person, other than briefly stating in his deposition that Defendant had made negative comments to [his] sister about him. Two isolated incidents * * * in the midst of a[n] unfriendly divorce in which negative comments were made does not rise to the level of atrocious behavior."
 {¶ 20} We agree with the trial court's assessment of this evidence. In two isolated circumstances, Tammie made allegations that Richard had a sexual interest in children. That claim had originally been made by his ex-wife in their divorce proceedings, and it caused Tammie to fear for the safety of her own child. Even adding her alleged claim — based on her own observation — that Richard viewed child pornography on their computer, there is simply no genuine issue of material fact that these claims were "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Additionally, we note that the record is devoid of evidence that Richard suffered psychic injury or that his mental anguish was of a nature that no reasonable man could be expected to endure it. Summary judgment was appropriate on the claim for intentional infliction of emotional distress.
 {¶ 21} Finally, we turn to the alleged assault, the basis for which was Richard's claim that Tammie had placed bullets in his belongings. "To establish a claim of civil assault, one must demonstrate a willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact." Brooks v.Lady Foot Locker, Summit App. No. 22297, 2005-Ohio-2394, at ¶ 18. Accordingly, to survive summary judgment, Richard had to establish that the bullets constituted a threat that reasonably placed him in fear of harm or an offensive touch. Noting that Richard voluntarily spent time alone with Tammie after allegedly finding the bullets, the trial court concluded that there was no genuine issue of material fact that he had been afraid of her. We agree with the trial court's conclusion that summary judgment was appropriate on this claim.
 {¶ 22} The judgment of the trial court will be affirmed.
 . . . . . . . . . .
FAIN, J., and GRADY, J., concur.
[1] See, e.g., Digital Analog Design Corp. v. North Supply Co.
(1992), 63 Ohio St.3d 651, 664, 590 N.E.2d 737, overruled on other grounds, Zoppo v. Homestead Ins. Co. (1994), 71 Ohio St.3d 552,644 N.E.2d 397 (the presumption of attorney fees award where punitive damages also awarded can be rebutted); Colling v. Franklin Cty. ChildrenServs., 76 Ohio App.3d 736, 740-741, 603 N.E.2d 338 (the presumption that kin have suffered damages for mental anguish as a result of wrongful death is rebuttable); Griffith v. Rutledge (1959),110 Ohio App. 301, 306, 169 N.E.2d 464 (the presumption that the person operating defendant's automobile, with the defendant in the car, was the defendant's agent is rebuttable).
[2] We note that, on appeal, Richard has attached a sworn affidavit from his priest to his "motion." It is axiomatic that an appellate court cannot decide an appeal on the basis of new evidence. State v.Ishmail (1978), 54 Ohio St.2d 402, 405-406, 377 N.E.2d 500. Moreover, the priest's affidavit does not address the issue of damages and, thus, would not have prevented summary judgment even if it had been offered in the trial court.