[Cite as *McLean v. Robertson*, 2016-Ohio-2953.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| VERA MCLEAN, | : | APPEAL NO. C-150651 |
| | | TRIAL NO. A-1500001 |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| JERALD ROBERTSON, | : | |
| | | |
| Defendant-Appellee. | : | |

Civil Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  May 13, 2016

*Newman & Meeks Co., L.P.A.,* and *Robert B. Newman* for Plaintiff-Appellant,

*Surdyk, Dowd & Turner Co., L.P.A.*, *Jeffrey C. Turner, Dawn N. Frick* and *Lauren L. Clouse*, for Defendant-Appellee.

Please note:  This case has been removed from the accelerated calendar.

**FISCHER, Presiding Judge.**

{¶1}    Plaintiff-appellant Vera McLean filed a complaint against defendant-appellee Jerald Robertson, alleging that Robertson had defamed her by falsely publishing that she had a "felony record."  The trial granted summary judgment in favor of Robertson.  We affirm the trial court's judgment.

{¶2}    The record shows that from 2000 to 2003, McLean was employed as the clerk of courts for the village of Elmwood Place Mayor's Court.  In 2003, Jim Toles, the then mayor of Elmwood Place, asked McLean to resign based on information he had received that McLean had been convicted of a felony.  The clerk of court's duties required McLean to access the Regional Crime Information Center's ("RCIC") database, and individuals with felony convictions were ineligible to use the database.

{¶3}    McLean testified that she had never been convicted of a felony.  She stated that she had been charged with theft as a felony, but had pleaded guilty to a misdemeanor, which was later expunged.  Nevertheless, McLean resigned from her position a few months later.

{¶4}    In 2008, McLean was rehired as the clerk of courts, which was then a full-time position.  Under Elmwood Place ordinances, the mayor appoints the clerk, who serves at the pleasure of the mayor.

{¶5}    In October 2014, Robertson became the mayor of Elmwood Place after serving as a member of the village council.  Robertson testified that he had been dissatisfied with McLean's job performance and had considered replacing her.

{¶6}    On December 1, 2014, the village council passed an ordinance that reduced the hours of several employees while increasing their hourly wages.  The ordinance was a money-saving measure that reduced the employees' work week to

four days and allowed the village to shut down the town hall for three consecutive days to save on utility costs.

{¶7}    As a result of that ordinance, McLean's position was reduced to 24 hours per week, which resulted in a loss of insurance benefits.  Subsequently, William Peskin, the Elmwood Place chief of police, asked McLean if she would be interested in assuming the duties of the police department clerk, which was another part-time position.  Taking the position would have allowed her to supplement her reduced hours as clerk of courts and regain her health benefits.

{¶8}    Upon learning about Peskin's offer to McLean, Robertson came to his office and asked, "Why are you hiring Ms. McLean.  She could not use the RCIC because she has a felony conviction."  On December 22, 2014, Robertson forwarded a copy of a letter Peskin had written in December 2002, to then mayor Toles, stating that McLean had "a felony conviction and is not allowed access to the [RCIC] computer system and printouts.  * * *  This is unfortunate but needs immediate attention[.]"  Robertson wrote on the copy of the letter, "Please check this out again as to her court record + the use of RCIC equipment.  Verify below."   Peskin responded, "Records shows no felony arrest or convictions.  Also shows nothing in clerk of courts records."

{¶9}    That evening, during an executive session of the village council discussing issues related to McLean's employment, Robertson mentioned McLean's alleged felony conviction to the members of council and the clerk treasurer. Robertson also showed the vice-mayor a file containing a number of documents from 2003 discussing McLean's felony conviction as well as a misdemeanor conviction for menacing by stalking.  No action regarding McLean's employment was taken following that meeting.

{¶10} In January 2015, discussion continued about McLean being appointed to the police-clerk position. On January 2, 2015, Robertson sent Peskin a memorandum stating that "[b]y combining the two jobs, we could justify restoring Vera's hours, salary and benefits while deducing [sic] past expenses. Looks like a win-win possibility." McLean never assumed the position of police clerk because the position was not filled. McLean understood that the position would not be filled and Peskin would assume the duties of police clerk so that the funds could be used for the purchase of a new police cruiser. Nevertheless, McLean continued to be employed part-time as the clerk of courts and was still employed by the village at the time of the trial court proceedings.

{¶11} In her sole assignment of error, McLean contends that the trial court erred in granting summary judgment in favor of Robertson. She contends that material issues of fact exist for trial on the elements of defamation. This assignment of error is not well taken.

{¶12} An appellate court reviews a trial court's ruling on a motion for summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996); *Evans v. Thrasher*, 1st Dist. Hamilton No. C-120783, 2013-Ohio-4776, ¶ 25. Summary judgment is appropriate if (1) no genuine issue of material fact exists for trial, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the moving party, who is entitled to have the evidence construed most strongly in his or her favor. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977); *Evans* at ¶ 25.

{¶13} To establish defamation, the plaintiff must show that (1) a false statement of fact was made; (2) the statement was defamatory; (3) the statement was published; (4) the plaintiff suffered injury as a proximate result of the publication;

4

and (5) the defendant acted with the requisite degree of fault in publishing the statement. *Mann v. Cincinnati Enquirer*, 1st Dist. Hamilton No. C-090747, 2010-Ohio-3963, ¶ 12. McLean contends that Robertson's statements were defamatory per se. *See Williams v. Gannett Satellite Information Network, Inc.*, 162 Ohio App.3d 596, 2005-Ohio-4141, 834 N.E.2d 397, ¶ 7 (1st Dist.).

{¶14} The Ohio Supreme Court has stated that in a defamation action, the plaintiff's prima facie case is "made out when he has established a publication to a third person for which defendant is responsible, the recipient's understanding of the defamatory meaning, and its actionable character." *Hahn v. Kotten*, 43 Ohio St.2d 237, 243, 331 N.E.2d 713 (1975). The defendant "may then invoke various defenses, if available." *Id.*

{¶15} One of those defenses is qualified privilege in which "the interest that the defendant is seeking to vindicate is conditioned upon publication in a reasonable manner and for a proper purpose." *Id.* A publication is privileged when it is "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned.*" A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 73 Ohio St.3d 1, 8, 651 N.E.2d 1283 (1995), quoting *Toogood v. Spyring*, 149 Eng.Rep. 1044, 1049-1050, 1 C.M. & R. 181, 193 (1834).

{¶16} One type of interest protected by a qualified privilege is the public interest. The public-interest privilege "involves communications made to those who may be expected to take official action of some kind for the protection of some interest of the public." *A & B-Abell Elevator Co.* at 9, quoting Prosser & Keeton, *The Law of Torts*, Section 115, 830 (5th Ed.1984). Where the circumstances of the occasion for the alleged defamatory communication are not in dispute, the determination of whether the occasion gives rise to the privilege is a question of law

for the court. *A & B-Abell Elevator Co.* at 7. The essential elements of a conditionally privileged communication are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties. *Id.* at 8, quoting *Hahn* at 245-246.

{¶17} Robertson, as mayor of the village, was responsible for the operations of the village, including the police department. He had a duty to communicate information to other village officials regarding employees' performance and ability to perform their duties. As the clerk of courts, McLean had access to citizens' personal information and collected thousands of dollars every week. Further, the ability to access the RCIC database was an important qualification for the police clerk, and whether McLean had a felony conviction and was qualified to perform the duties of the clerk of courts or the police clerk were matters of public concern. Moreover, Robertson communicated the information only to other village public officials who also had an interest in village operations and in its employees' ability to perform their duties.

{¶18} McLean does not assert that there was no public interest. She contends that Robertson did not act in good faith. To defeat a qualified privilege, the plaintiff must prove that the published statements were made with actual malice. Proof of actual malice requires clear and convincing evidence that the defendant, acting out of spite or ill will, made the statements either with knowledge that they were false or with reckless disregard for their truth. *Jacobs v. Frank*, 60 Ohio St.3d 111, 573 N.E.2d 609 (1991), paragraph two of the syllabus; *Brunsman v. W. Hills Country Club*, 151 Ohio App.3d 718, 2003-Ohio-891, 785 N.E.2d 794, ¶ 24 (1st Dist.). Mere negligence, including a failure to investigate, is not enough to establish actual malice. *A & B-Abell Elevator Co.*, 73 Ohio St.3d at 13, 651 N.E.2d 1283; *Rolsen v. Lazarus, Inc.*, 1st Dist. Hamilton Nos. C-990588 and C-990627, 2000 Ohio App.

6

LEXIS 4466, *9 (Sept. 29, 2000). There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of the publication. *A & B-Abell Elevator Co.* at 13, quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).

{¶19} McLean asserts that because falsely asserting that she had a felony record was defamation per se, she did not have to make a showing of actual malice. This assertion is not a correct statement of the law. Even statements that would otherwise constitute defamation per se are not actionable when the defendant has a qualified privilege. *Shepard v. Griffin Servs.*, 2d Dist. Montgomery No. 19032, 2002-Ohio-2283, ¶ 45; *Stokes v. Meimaris*, 111 Ohio App.3d 176, 189, 675 N.E.2d 1289 (8th Dist.1996).

{¶20} McLean argues that a reasonable juror could have found that Robertson acted with actual malice because he told the village council about her alleged felony conviction after the police chief had already told him that court records did not reveal any felony conviction. We disagree. First, the record is unclear as to when Robertson actually received that information. Second, Robertson had contrary information from McLean's file, including documents related to her 2003 resignation, so that he was justified in discussing the issue with the village council and other city officials.

{¶21} McLean also contends that Robertson was aware that she had applied for an expungement and that the later absence of any record of a conviction would be "highly suggestive, if not conclusive, of the granting of an expungement." Again, we disagree. While Robertson may have been aware that she had applied for an expungement, nothing in the record shows that he knew whether the expungement had been granted and what conviction had actually been expunged. In fact, a 2003 letter in McLean's file from the village solicitor indicated that she had

more than one conviction, and therefore, a court would be unlikely to grant her an expungement.

{¶22}    We hold that McLean failed to present clear and convincing evidence of malice as a matter of law.  *See A & B-Abell Elevator Co.*, 73 Ohio St.3d at 13-14, 651 N.E.2d 1283.  The trial court was correct when it stated:

> While Plaintiff argues that Defendant acted with reckless disregard, the evidence submitted does not support such.  Defendant reviewed the documents in Plaintiff's file, requested that the Police Chief verify whether the information was still valid, and contacted the former mayor to confirm the information.  There is simply no evidence of reckless disregard or malice.

{¶23}    We find no issues of material fact.  Construing the evidence most strongly in McLean's favor, we hold that reasonable minds could come to but one conclusion—that McLean failed to show actual malice and, therefore, the qualified privilege applied.  Robertson was entitled to judgment as a matter of law, and the trial court did not err in granting summary judgment in his favor.  Consequently, we overrule McLean's sole assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**HENDON** and **STAUTBERG, JJ.,** concur.

Please note:

> The court has recorded its own entry this date.