SCHAFFHAUSER BROTHERS, Appellees, v. ELIZABETH HEMMER, Appellant.

**Slander and libel:** DAMAGES: EVIDENCE. Where alleged slanderous utterances relate solely to plaintiff's business, evidence of subsequent decrease in the business is not permissible, unless it is shown that there was some direct or circumstantial connection between the alleged slander and the diminution of plaintiff's business. And where that was the only evidence offered a verdict for plaintiff conclusively demonstrates its prejudicial character.

**Appeal:** SUFFICIENCY OF PLEADINGS: REVIEW. Where the sufficiency of a petition as stating a cause of action is in no manner raised on the trial or in the printed record the appellate court will not pass upon the question.

*Appeal from Dubuque District Court.*—HON. ROBERT BONSON, Judge.

FRIDAY, MAY 12, 1911.

ACTION at law to recover damages for alleged slanderous words spoken of the plaintiff's business. Judgment for plaintiffs, and defendant appeals.—*Reversed.*

*Hurd, Lenehan & Kiesel,* for appellant.

*Kenline & Roedell,* for appellees.

WEAVER, J.—The petition alleges that plaintiffs constitute a partnership, and for a considerable period have been engaged in the business of conducting a hotel known as the St. George, in the city of Dubuque, Iowa, and that in April, 1907, the defendant, in the presence and hearing of Rosina Ploeger and others, spoke of and concerning the plaintiffs and their business false and defamatory words as follows:  That said hotel was used and conducted as a sporting house for bad, lewd, and immoral people and purposes, and as a house of ill fame, intending to convey thereby, and the persons in whose presence and hearing the words were spoken so understood, that plaintiffs conducted and used said hotel as a house of assignation and ill fame, by reason of which defamation plaintiffs allege that they have been injured "in their reputation and in their said property in the depreciation of the value thereof and loss of business in the sum of $10,000." The defendant denies the alleged slander, and avers that at the time alleged in the petition the plaintiffs were and at all times since said date have been occupying, keeping, and maintaining said place known as the St. George Hotel as a public and common nuisance in open violation of law.  Trial was had to a jury, and verdict returned for plaintiffs for $500. Defendant's motion for new trial was overruled, and from the judgment entered thereon she appeals.

The situation will be more readily apprehended by a brief reference to the circumstances leading up to this litigation.  For several years plaintiffs occupied and used the building or place known as the St. George Hotel as a hotel or boarding house and liquor saloon.  The liquors were kept and sold in the central or middle room of the building, from which doors opened into the office and the sitting rooms for men and women.  Upon a lot immediately adjoining this property the defendant had her residence.  On

the other side of defendant's said residence property was another liquor saloon conducted by one Dunlavey. Both saloons were being kept and maintained in violation of law. In April, 1907, and about the time of the alleged speaking of the defamatory words, actions were instituted by one Thorne and possibly others which resulted in decrees against both plaintiffs and Dunlavey, enjoining them from maintaining said liquor nuisances except under certain specified regulations. Upon *certiorari* proceedings in this court begun by the defendant herein these decrees were held to be erroneous, in that they failed to provide for an absolute and complete injunction against the unlawful business. *Hemmer v. Bonson*, 139 Iowa, 210; *Hemmer v. Bonson*, 117 N. W. 260. In January, 1908, and while said actions were still pending in this court, plaintiffs approached defendant, expressing a desire for the settlement of the litigation, and the parties had some talk concerning a purchase by plaintiffs of defendant's property, but no agreement was reached, and within a few days thereafter this action was brought. Plaintiff's evidence tends to show that on April 25, 1907, the saloon prosecution was the subject of some conversation between the defendant and Rosina Ploeger, who was living in defendant's house. Mrs. Ploeger says she told defendant of a rumor that Dunlavey had threatened that, if compelled to close his saloon, he would open a "nigger boarding house" at his place, and that defendant responded: "I would rather live alongside a nigger boarding place than a place like the Schaffhausers are keeping." She further says that in the same connection defendant said the Schaffhausers were running a chippy place—a high-toned sporting house. No other person was present at this conversation, but one Arnold, who is mentioned as the "prospective son-in-law" of Mrs. Ploeger, says he was in an adjoining room, and he corroborates in a general way the testimony of that witness. The defendant denies the conversation,

and denies using the words or anything of like substance or effect. Of the questions raised for our consideration we shall refer to those only which appear essential to a disposition of the appeal.

Before the case was submitted, the plaintiffs entered a disclaimer, which at their request was embodied in the court's instructions to the jury as follows: "You are hereby instructed that plaintiffs make no claim for damages on account of or resulting to any saloon or saloon business, nor any reputation arising therefrom, nor on account of or resulting to any building in, or the premises upon, which any saloon business was conducted. · Therefore you are not to consider any of these elements in fixing the amount of damages, if any, should you find for the plaintiffs under these instructions."

Among other instructions given to the jury were the following:

(15)   You are instructed that the evidence shows without contradiction that a saloon existed in the St. George Hotel at the time the said words, if any, are alleged to have been spoken, and that said saloon at the time was being operated by the plaintiffs contrary to and in violation of law, and any words, malicious or otherwise, spoken of or concerning said unlawful business when the words spoken refer to such unlawful business or the persons engaged in such business, or to being engaged in such unlawful business, are not actionable, and no recovery therefor can be had. Against whom, if anybody, were the alleged slanderous words, if any, spoken, and against what property or business, if any, spoken? Did they refer to the illegal saloon, or to the plaintiffs as keepers of the illegal saloon, or to the business of plaintiffs as keepers or proprietors of the illegal saloon? If they did so refer in any degree, your verdict must be for the defendant. The burden of proving that they did not refer to plaintiffs as the keepers of an illegal saloon, or against the illegal saloon, or the business of plaintiffs as keepers or proprietors of an illegal saloon, is upon the plaintiffs to establish by a preponderance of the credible evidence. . . .

(24) The plaintiffs are a copartnership, and in this suit their individual character, reputation, business, or property are not in issue in this case. The slanderous words alleged to have been spoken of this copartnership would not justify you in considering them as in any manner affecting the individual rights of the members of that copartnership. . . .

(27) You are instructed that the undisputed evidence submitted to you established the fact that at and before the time of the alleged speaking of the words charged to be slanderous, and after that time, the plaintiffs, Schaffhauser Bros., kept and maintained a public nuisance in connection with, and in the same building in which the hotel kept by them was conducted, by selling and keeping for sale intoxicating liquors contrary to law. . . .

.I. Upon the question of plaintiff's alleged damages, they were permitted over defendant's objection to show how many boarders they had on April 25, 1907, and that after that date, and in the month of May, that number was decreased. They were also allowed to state that the receipts of their business prior to that date were about $1,000 per month, and that after the month of June, when their business was increased by the State Grand Army meeting, the receipts for the remainder of the year dropped to about $775 per month. That testimony of this character is incompetent to prove damages in cases of slander and libel has been distinctly ruled by this court. *Bank v. Fritz,* 135 Iowa, 44. To render it admissible, there must be some direct or circumstantial evidence tending to show connection between the alleged slander and the diminution of plaintiff's business. There is no charge or evidence that defendant spoke the slanderous words in the presence or hearing of any other person or persons than Mrs. Ploeger and Aldrich, and it affirmatively appears that it did not affect their relations with plaintiffs. If they repeated the slander to others, and such other persons withdrew their patronage from plaintiffs, then the persons repeating the

1. SLANDER AND LIBEL: damages: evidence.

defamatory statement were liable for the injury so resulting and ordinarily the defendant would not be liable. Such is certainly the rule in the absence of evidence connecting the alleged damage or loss of business with the publication of the slanderous words by defendant. Such connection will not be presumed. *Prime v. Eastwood*, 45 Iowa, 640; *Zurawski v. Reichmann*, 116 Iowa, 388; *Bank v. Fritz*, 135 Iowa, 44. Plaintiffs, as witnesses, admit their inability to name or point out a specific instance where any person was led to withdraw his patronage from them on account of the statement made by the defendant.

In view of the fact that no other evidence was offered to sustain the claim of injury to plaintiff's business, and that the court directed the jury that nothing in the way of exemplary or punitive damages could be recovered, the verdict which was returned quite conclusively demonstrates the prejudicial character of the error in admitting this testimony.

Some question is raised whether in preparation of briefs counsel have observed our rules with sufficient fidelity to entitle them to argue all the matters presented by them and discussed in this opinion. Concerning this, it may be said that in neither side have those rules been followed with technical exactness, but they are not so informal or so lacking in essential respects that we feel at liberty to ignore them. All the points to which we have referred have been discussed by the respective counsel. They are pertinent to the issues presented, and no good reason appears why we should not pass upon them.

II. Upon oral argument in this court counsel for appellant suggested the point that the petition does not allege a cause of action, in that it does not attempt to state the al-
2. Appeal: sufficiency of   leged slander in the words of the defendant.
pleadings: review.   The point is also made that the words testified to by the plaintiff's witnesses are at variance with the charge made in the petition. The sufficiency of the

petition does not appear to have been challenged by demurrer or by motion in arrest, nor is the point made in the printed record, and we can not undertake to pass upon the question. But see 13 Encyclopedia Pl. & Pr. 47; 25 Cyc. 447; *Book Co. v. Publishing Co.,* 71 Minn. 363 (73 N. W. 1089); *Gendron v. St. Pierre,* 72 N. H. 400 (56 Atl. 915); *Webster v. Holmes,* 62 N. J. Law, 55 (40 Atl. 778); *Schubert v. Richter,* 92 Wis. 199 (66 N. W. 107); *Kirby v. Martindale,* 19 S. D. 394 (103 N. W. 648).

Appellant further claims that under the undisputed evidence and the law as stated in the instructions and rulings of the trial court in the course of the trial there should have been a verdict directed for the defendant, or at least a new trial should have been granted. Some members of the court are disposed to hold that this point is well made, and that a verdict should have been directed for the defendant, but a new trial being made necessary because of the error pointed out in the preceding paragraph, and it being quite possible that the same questions may not arise on another hearing, it is deemed better not to attempt its discussion or decision at this time. The question whether there is not a material variance between the allegations of the petition and the proof offered in its support is but another form of the same objection, and for like reasons we do not now pass upon it.

For reasons above stated, a new trial must be ordered, and to that end the judgment of the district court is ordered *reversed.*