MOORE, APPELLEE, *v.* P. W. PUBLISHING CO., INC., APPELLANT.

[Cite as Moore v. P. W. Publishing Co., 3 Ohio St. 2d 183.]

(No. 39016—Decided July 28, 1965.)

*Messrs. Hinton, Konstand & Landi* and *Mr. James R. Hinton,* for appellee.

*Mr. W. Howard Fort, Messrs. Brouse, McDowell, May, Bierce & Wortman* and *Mr. Clarence W. May,* for appellant.

BROWN, J. It is apparent that the validity of the plaintiff's judgment depends upon two questions. One, are the

words, "Uncle Tom," libel per se, and two, if such words are not libel per se are the words libel *per quod* and did the plaintiff, as she must in a case of libel *per quod*, prove special damages.

To be libelous per se words must be of such a nature that courts can presume as a matter of law that they tend to degrade or disgrace the person of whom they are written or spoken, or hold him up to a public hatred, contempt or scorn. *Digest Publishing Co.* v. *Perry Publishing Co.*, 284 S. W. 2d·832.

Judge Stewart, in a leading Ohio case, *Becker* v. *Toulmin*, 165 Ohio St. 549, points out that it is well settled in Ohio that in an action for libel the question of whether the publication complained of is libelous per se is primarily for the court and that it is error to submit to the jury the question of whether the publication is libelous per se. *Mauk* v. *Brundage*, 68 Ohio St. 89, is cited and quoted in that opinion as is *Cleveland Leader Printing Co.* v. *Nethersole*, 84 Ohio St. 118. In the *Becker case*, *supra*, at page 556, Judge Stewart said:

"If the court can not determine a publication to be libelous per se as a matter of law, it may not allow the jury to do so as a matter of fact. * * *

"We come now to a discussion of another kind of libel, to wit, libel *per quod*.

"Libel *per quod* may occur where a publication, which, of itself, or per se, is not libelous, becomes so by the use of an innuendo rendering the apparently harmless words into libelous ones by extrinsic evidence or, as is said, aliunde, as distinguished from per se.

"In the present case, plaintiff claims that the cablegram and letter, although they do not of themselves proclaim that defendant had discharged plaintiff for lack of professional competence, were capable of suggesting to a reasonable reader that defendant had discharged plaintiff for such reason; that it was proper to submit that question to the jury; and that, if the jury found that a reasonable reader could find the words libelous, the publication was libelous per se.

"We are unable to approve such doctrine. It constitutes a contradiction of terms. Libel per se means libel of itself, or

upon the face of a publication, whereas libel *per quod* is libel by an interpretation, through an innuendo, between an innocent or harmless meaning and a libelous one.

"If a publication can by innuendo be construed to be either nonlibelous or libelous, the question may be submitted to a jury provided special damages have been pleaded and proved by the one claiming libel. There can be no maintenance of an action for libel *per quod* in the absence of proof of special damages" (citing *Cleveland Leader Printing Co.* v. *Nethersole*, 84 Ohio St. 118).

The foregoing long quotation is extremely apt in the instant case. The words, "Uncle Tom," have no commonly understood opprobrious meaning to one who is not knowledgeable in the language of the comparatively recent militant civil rights movement. The term "Uncle Tom" takes its definition from the character in Harriet Beecher Stowe's "Uncle Tom's Cabin." One visualizes that character as loyal, patient, humble and long suffering. Since this is a commonly accepted meaning of the term as indicated in Webster's New International Dictionary (2 Ed), the plaintiff, under the case cited, was required to prove the innuendo and the damage.

The innuendo was pleaded. The petition says, "branded the plaintiff as an 'Uncle Tom,' as a person who was a detriment to the progress of her Negro minority group, * * * as a person who was disloyal to her race * * *." Mrs. Moore testified that the phrase, "Uncle Tom," as directed to a person has an established meaning in ordinary usage today *among the Negro population generally* as "a person who will sell out his community, his race, who will do things for himself rather than for his people * * *."

Mr. Edward Jerome Davis, another highly regarded member of the Negro race and prominent member of the Democrat party was called as a witness for the plaintiff and testified that "Uncle Tom" meant to the Negro community "a person who for selfish reasons would sell—we use the term 'sell out'."

The Reverend Mr. Lynton defined an "Uncle Tom" as a "Judas Goat" but further testified that there is a difference of opinion in the Negro community as to what constitutes an "Uncle Tom."

The trial court during the trial specifically ruled that the words, "Uncle Tom," if libel at all were libel *per quod*. For this reason the meaning or innuendo of the words required a fourth of this record and the special verdict included (without objections of plaintiff) special findings as to whether the words, "Uncle Tom," imputed to the plaintiff conduct tending to harm her reputation and lower her in the estimation of the community and deter people from dealing with her.

Since such words are libel *per quod* the claim of the defendant that there was no evidence of special damage sufficient to sustain such an action becomes most important. The petition does not plead special damage although the law requires a plaintiff in such an action to do so. The petition claims that Mrs. Moore suffered money damages in the amount of $10,000. This is a most general allegation. Cases involving allegations which are sufficient to permit recovery of special damages from false publications are collected in an annotation in 86 A. L. R. 848. Those cases require that the particular contracts, sales, customers, patients or clients lost must be alleged as a prerequisite to recovery of special damage. The cases in this annotation are numerous and persuasive.

The failure to plead such special damages would have barred proof of such; but none was offered. The evidence which the plaintiff presented to prove special damage concerned the claimed monetary loss in plaintiff's business of selling automobile license plates. That testimony, considered most favorably to the plaintiff's claim, would show a difference in sales for the year 1961 (before the alleged libel) of 1,800 plates sold, for the year 1962 (after the alleged libel) of 1,600 plates sold. The difference in gross profit to the plaintiff did not exceed $70. It was not shown that this difference was attributable to the claimed wrongful conduct of the defendant. There is no evidence that a single person who intended to or might have been an applicant for license plates read the article and by reason thereof abstained from buying a license plate from the plaintiff. Such proof is essential. Newell, Slander and Libel, Fourth Ed., Section 755, page 842; Gatley, Libel and Slander, 2d Ed. 677; *Bigelow* v. *Brumley,* 138 Ohio St. 574; *Schaffhauser Bros.* v. *Hemmer,* 152 Iowa 200, 131 N. W. 6;

*Del Rico* v. *New Mexican, Inc.*, 56 N. Mex. 538, 246 P. 2d 206; *Pecyk* v. *Semoncheck*, 61 Ohio Law Abs. 465; annotation, 86 A. L. R. 848.

In view of the total lack of evidence of special damages, the judgment must be reversed and final judgment rendered for the defendant.

*Judgment reversed.*

TAFT, C. J., ZIMMERMAN, MATTHIAS, O'NEILL, HERBERT and SCHNEIDER, JJ., concur.