OPINION
{¶ 1} This timely appeal comes for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Defendant-Appellant, Automotive Finance Corporation ("AFC"), appeals the decision of the Mahoning County Court of Common Pleas that granted judgment to Plaintiff-Appellee, John A. Christopher, on Christopher's claims for libel and tortious interference and awarded prejudgment interest on that judgment. On appeal, AFC argues that the trial court should have granted it a directed verdict/JNOV on those claims; that the trial court erred when instructing the jury; that Christopher's damages were speculative; that the jury awarded duplicate damages; and, that the trial court erred when awarding prejudgment interest.
 {¶ 2} AFC is correct regarding the trial court's refusal to grant it a directed verdict/JNOV on both of Christopher's claims. The letter forming the basis of the libel claim does not objectively refer to Christopher acting in a wrongful manner in any way. Furthermore, AFC was justifiably defending its interests in the automobile in question when it sent that letter to Christopher's customer, the current possessor of the vehicle. Accordingly, the trial court's decision is reversed and judgment notwithstanding the verdict is granted to AFC on all counts.
 Facts {¶ 3} Christopher started and ran an automobile wholesale business, named LJ Auto Sales, in the mid 1990s, purchasing and selling used cars at auction. He had a good reputation in the automobile dealership community and his business was successful.
 {¶ 4} AFC is a financing company which finances the purchase of inventory by automobile wholesalers and dealerships. One of AFC's clients was EM Sales. AFC financed the purchase of certain vehicles by EM Sales and held on to the titles of those vehicles as security for those loans. AFC investigated the status of its investment with EM Sales and discovered that many of the vehicles to which it held title were no longer in EM Sales' possession. Apparently, EM Sales obtained duplicate titles to those vehicles which appeared to be original titles and then sold those vehicles to third parties.
 {¶ 5} Christopher bought one of these vehicles from EM Sales and sold it to *Page 2 
Greenwood Chevrolet, an automobile dealership in Austintown, Ohio. Greenwood also financed its inventory through AFC. When it asked AFC to finance the purchase of that automobile, AFC refused, claiming that it had a valid security interest in that vehicle already. AFC sent a letter to Greenwood referencing "EM Sales, Inc./WW Auto" and stating, among other things, as follows:
 {¶ 6} "AFC has at all times been in actual possession of the ORIGINAL title to said Vehicle(s). The duplicate title that you have was fraudulently acquired. Therefore, the duplicate title that you are in possession of has no legal effect and is not transferable."
 {¶ 7} Greenwood understood this letter to mean that Christopher had engaged in fraudulent activity. Although Greenwood had purchased many vehicles from Christopher in the past, it did not buy another vehicle from him after receiving this letter.
 {¶ 8} Soon after this letter was sent out, people in the automobile industry stopped purchasing vehicles from Christopher at their fair market value. This eventually drove Christopher out of business. He then filed a complaint against AFC alleging nine counts, including libel and tortious interference.
 {¶ 9} The case proceeded to trial and AFC moved for a directed verdict on all counts after Christopher presented his case-in-chief. The trial court granted that motion on all but two counts: the one for libel and the one for tortious interference. The jury returned a verdict for Christopher, awarding him $482,000.00 on his libel claim and $141,000.00 on his tortious interference claim. AFC moved for JNOV after trial, but that motion was denied.
 Directed Verdict/JNOV {¶ 10} In the first assignment of its five assignments of error, AFC argues:
 {¶ 11} "The trial court erred to the prejudice of AFC in not granting AFC's motion for directed verdict or motion for judgment notwithstanding the verdict ("JNOV") and the jury's verdict should, therefore, be reversed and judgment entered in favor of AFC."
 {¶ 12} Motions for directed verdict and JNOV employ the same standard.Posin v. A.B.C. Motor Court Hotel, Inc. (1976), 45 Ohio St.2d 271, 275. A trial court must grant a *Page 3 
motion for a directed verdict or JNOV if, upon "construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ. R. 50(A)(4); Nickell v. Gonzalez (1985),17 Ohio St.3d 136, 137. When engaging in this analysis, a court must neither weigh the evidence or evaluate the credibility of witnesses.Malone v. Courtyard by Marriott L.P., 74 Ohio St.3d 440, 445, 1996-Ohio-0311. "Rather, the court is confronted solely with a question of law: Was there sufficient material evidence presented at trial on this issue to create a factual question for the jury?" Id. This court reviews a trial court's ruling on these motions de novo. Goodyear Tire Rubber Co. v. Aetna Cas. Sur. Co., 95 Ohio St.3d 512,2002-Ohio-2842, at ¶ 4.
 {¶ 13} Since AFC contends that the trial court erred in not granting their motions on both of Christopher's claims against it, each of those arguments will be addressed individually.
 Libel {¶ 14} The first claim under which Christopher recovered against AFC was for libel. In a libel claim, the plaintiff must establish: 1) a false statement of fact was made concerning the plaintiff, 2) the statement was defamatory, 3) the statement was written, 4) the statement was published, and 5) the defendant acted with the requisite degree of fault in the publishing. Bruss v. Vindicator Printing Co. (1996),109 Ohio App.3d 396, 399; A B-Abell Elevator Co. v. Columbus/Cent. OhioBldg. Constr. Trades Council, 73 Ohio St.3d 1, 7, 1995-Ohio-0066.
 {¶ 15} There are two types of libel, libel per se and libel per quod. Material that is defamatory on its face is defamation per se. Moore v.P.W. Pub. Co. (1965), 3 Ohio St.2d 183, 188. Material that is not defamatory by itself but becomes so by the use of interpretation or innuendo is defamation per quod. Id. In this case, we conclude, and the parties agree, that the statement in this case was not defamatory on its face and that this case involves libel per quod.
 {¶ 16} The parties disagree over whether the evidence supports the jury's *Page 4 
conclusion that AFC made a false written statement of fact about Christopher. Christopher points to two different statements which he claims supports the jury's verdict: 1) a written statement in a letter from AFC to one of Christopher's customers, Greenwood Chevrolet and 2) an oral statement from AFC to one of Christopher's customers.
 {¶ 17} Christopher's second argument is without merit. In order for a statement to be libelous, it must be written. A B-Abell Elevator at 7. An oral statement is slander. Fairfield Mach. Co., Inc. v. Aetna Cas.and Sur. Co. (Dec. 28, 2001), 7th Dist. No. 2000 CO 14, at 5. Christopher pleaded both libel and slander in his complaint against AFC. The trial court granted AFC a directed verdict on all those defamation claims except one, the one stating libel per quod for the letter from AFC to Christopher's customer. Accordingly, the only statement by AFC which could support the jury's verdict is the written letter from AFC to Christopher's customer.
 {¶ 18} When reaching this conclusion, we recognize that the trial court instructed the jury that the claim Christopher was presenting was that he had been "defamed per quod" by AFC and defined defamation as "a false written or oral statement that injures another's reputation." Nevertheless, the trial court's language when granting AFC's motion for a directed verdict was very specific. It stated as follows:
 {¶ 19} "We'll have the record reflect the fact that on the closing of the day on Friday there was a motion for directed verdict filed — given orally to the court by defense counsel concerning the claims made in plaintiff's original amended complaint. * * * It's the opinion of the court that reasonable minds can only come to one conclusion pertaining to all claims with the exception of the second and sixth claim of the defendant-or of the plaintiff. And as a result thereof, it's the determination of the court that the remaining six claims as presented in the amended complaint will at this point be dismissed."
 {¶ 20} The trial court's subsequent decision to instruct the jury on defamation generally, rather than libel in particular, does not change the fact that it granted a directed verdict to Christopher on the slander claim before AFC was given the opportunity to defend against that claim. Christopher has not cross-appealed to challenge that decision. *Page 5 
Therefore, Christopher cannot now defend the jury's verdict by relying on an allegedly defamatory oral statement.
 {¶ 21} The only written statement which could support the jury's verdict was the letter from AFC to Greenwood. In that letter, AFC referenced only "EM Sales, Inc./WW Auto" and stated, among other things, the following:
 {¶ 22} "AFC has at all times been in possession of the ORIGINAL title to said Vehicle(s). The duplicate title that you have was fraudulently acquired. Therefore, the duplicate title that you are in possession of has no legal effect and is not transferable."
 {¶ 23} The letter never explicitly referred to either Christopher or LJ Auto Sales. AFC argues the statement is not about Christopher, since he is not mentioned anywhere in the letter, so the statement cannot be libelous to Christopher.
 {¶ 24} The Ohio Supreme Court has held Article I, Section 11 of the Ohio Constitution prohibits defamation actions for statements which "cannot reasonably be interpreted by the ordinary reader as stating actual facts about an individual." Disciplinary Counsel v. Gardner,99 Ohio St.3d 416, 2003-Ohio-4048, at ¶ 19, citing In re Harper (1996),77 Ohio St.3d 211, 229; McKimm v. Ohio Elections Comm., 89 Ohio St.3d 139,144, 2000-Ohio-0118. This protection is beyond that afforded by the Federal Constitution in that certain false statements of opinion are protected. Id. Thus, an issue in any defamation action in Ohio is whether a statement is one of fact or opinion.
 {¶ 25} When trying to differentiate fact from opinion for the purposes of defamation suits, the Ohio Supreme Court has held that courts must "assess `the common meaning ascribed to the words by an ordinary reader' in order to determine whether an allegedly libelous statement is a false statement of fact." McKimm v. Ohio Elections Comm., 89 Ohio St.3d 139,144, 2000-Ohio-0118, quoting Vail v. Plain Dealer Publishing Co.,72 Ohio St.3d 279, 282, 1995-Ohio-0187. Thus, according to McKimm, "the law charges the author of an allegedly defamatory statement with the meaning that the reasonable reader attaches to that statement." Id. at 145. If the law were not so, "publishers of false statements of fact could routinely escape liability for their harmful and false assertions simply by advancing a harmless, subjective interpretation of those statements." Id. *Page 6 
 {¶ 26} The Ohio Supreme Court has yet to specifically apply this "reasonableness" test to determine whether a statement is about a plaintiff. However, this is consistent with the court's approach for three main reasons. First, the court's language in Gardner indicates that this is the approach the court would take. For example, the statement quoted above could be read to mean statements which "cannot reasonably be interpreted by the ordinary reader [to be] about an individual" are not actionable. This is supported by a statement inMcKimm saying that "courts assess the meaning of an allegedly libelous statement under an objective standard — that of the reasonable reader." Id. at 143.
 {¶ 27} Second, many of the concerns expressed by the court inMcKimm about applying a subjective test to distinguish fact from opinion apply to this issue as well. If this court applied a subjective test to determine whether a statement is about a person, then anytime someone is not specifically named, and sometimes even when they are, a defendant could avoid liability "simply by advancing a harmless, subjective interpretation of those statements."
 {¶ 28} Finally, this is the approach that appellate courts have used when dealing with this situation. For instance, in Gosden v. Louis
(1996), 116 Ohio App.3d 195, the defendants had written a letter referring to a man by name and "his son." The man only had one son, yet the defendant claimed that the statement was not about the son, since he was not named, and that the statement was not actionable by the son. The Ninth District disagreed, stating that "[a] plaintiff need not have been specifically named in a libelous statement to have been defamed." Id. at 218. According to that court, the focus of the inquiry is on whether the recipient of the communication understood it to refer to the plaintiff. Id. The court in that case did not have to deal with whether the recipient's understanding was reasonable, but it is sensible to assume that courts following this line of thought would impose a reasonableness requirement.
 {¶ 29} Likewise, the Sixth District found that a statement in a newspaper editorial was not about the plaintiff because "the reasonable reader would not make any connection between these statements and [the plaintiff]." Early v. The Toledo Blade *Page 7 
(1998), 130 Ohio App.3d 302, 323.
 {¶ 30} In this case, the used car manager at Greenwood testified that he understood the letter to mean that Christopher had fraudulently acquired title to the vehicle in question. However, the language used in the letter does not refer to Christopher in any way, even tangentially. It was clearly written in reference to only EM Sales, Inc./WW Auto, a business other than Christopher's business. The letter indicates that AFC believes that a fraud occurred somewhere in Greenwood's chain of title, but the only logical inference from this letter is that the business to which the letter specifically referenced was at fault.
 {¶ 31} Since the letter in question could not reasonably be interpreted as being about Christopher, he failed to demonstrate that he was libeled by AFC. Accordingly, the trial court erred when it denied AFC's motion for JNOV on Christopher's libel claim.
 Interference with a Contract {¶ 32} In its second argument within this assignment of error, AFC contends that the trial court erred in granting judgment to Christopher on his tortious interference with a contract claim since Christopher failed to prove both the existence of a contract and lack of justification for AFC's actions. The Ohio Supreme Court first formally recognized a cause of action for tortious interference with a contract in Kenty v. Transamerica Premium Ins. Co., 72 Ohio St.3d 415, 1995-Ohio-0061. It held that a plaintiff must prove the following five elements to make out this claim: 1) the existence of a contract, 2) the wrongdoer's knowledge of the contract, 3) the wrongdoer's intentional procurement of the contract's breach, 4) lack of justification, and 5) resulting damages. Id. at 419.
 {¶ 33} There are three basic types of contracts: express, implied in law, and implied in fact. Legros v. Tarr (1989), 44 Ohio St.3d 1, 6. In express contracts, the parties have actually assented to the terms of the contract in an offer and acceptance. Id. A contract is implied in fact if the meeting of the minds is shown by the surrounding circumstances which make it inferable that the contract exists as a matter of tacit understanding. Id. at 6-7. "`In contracts implied in law there is no meeting of the minds, but civil liability arises out of the obligation cast by law upon a person in receipt of benefits *Page 8 
which he is not justly entitled to retain and for which he may be made to respond to another in an action in the nature of assumpsit. Contracts implied in law are not true contracts; the relationship springing therefrom is not in a strict sense contractual but quasi-contractual or constructively contractual. In truth contracts implied in law are often called quasi contracts or constructive contracts.'" Id. at 7, quotingHummel v. Hummel (1938), 133 Ohio St. 520, 525.
 {¶ 34} In this case, Christopher acknowledges that there was no express contract between he and Greenwood. Likewise, there is no contract implied in law, since there is no indication that either Christopher or Greenwood were in receipt of benefits which he or it was not justly entitled to retain. Instead, he bases his claim on the "regular course of doing business" he had established with Greenwood and is trying to establish an implied in fact contract.
 {¶ 35} This court has recognized that a claim for tortious interference with a contract could be based on either an express or implied contract. Reali, Giampetro Scott v. Soc. Natl. Bank (1999),133 Ohio App.3d 844, 849. In order to prove an implied in fact contract, the party claiming the contract must demonstrate "that the circumstances surrounding the parties' transaction make it reasonably certain that the contract exists `as a matter of tacit understanding.' The conduct and declarations of the party must be examined to determine the existence of an intent to be bound. Furthermore, the existence of a contract is generally determined by a court as a matter of law." (Citations omitted) Id. at 149-150, quoting State ex rel. Mallory v. Public Emp. RetirementBd., 82 Ohio St.3d 235, 249-250, 1998-Ohio-0380.
 {¶ 36} Examples of situations where courts have found an implied in fact contract include a group of people contributing to a lottery pool,Stepp v. Freeman (1997), 119 Ohio App.3d 68; and when a party silently assents to having someone else perform work for him. Barlay v. Yoga'sDrive Thru, 10th Dist. No. 03AP-545, 2003-Ohio-7164.
 {¶ 37} The problem with Christopher's argument is that a regular course of doing business in the past does not amount to a contract to do business in the future. There is no way for this court to determine what the terms of any implied in fact contract would be; *Page 9 
Christopher was not bound to sell cars to Greenwood and Greenwood was not bound to buy cars from Christopher. Thus, there is not an implied in fact contract between Christopher and Greenwood.
 {¶ 38} Finally, Ohio law also recognizes the tort of intentional interference with a prospective contractual relationship, also known as tortious interference with a business relationship. See, e.g., A B-Abell at 14; Brakefire, Inc. v. Overbeck, 144 Ohio Misc.2d 35,2007-Ohio-6464, at ¶ 50. This is more in line with Christopher's argument on appeal regarding an ongoing business relationship. One of the claims which the trial court dismissed when it granted a directed verdict to AFC was for interference with a business relationship. However, Christopher's sixth claim also alleged tortious interference with a business relationship.
 Interference with a Business Relationship {¶ 39} "The elements of tortious interference with a business relationship are (1) a business relationship; (2) the tortfeasor's knowledge thereof; (3) an intentional interference causing a breach or termination of the relationship; and (4) damages resulting therefrom."Dolan v. Glouster, 173 Ohio App.3d 617, 2007-Ohio-6275, at ¶ 33. In his sixth claim for relief, Christopher alleged that Greenwood was his "business associate," that AFC knew of "the business relationship that Plaintiff had with Greenwood Chevrolet," that AFC has "interfered with * * * the contracts and business relationships" Christopher had with Greenwood and other dealerships, and that Christopher has suffered damages as a result of AFC's actions. These allegations encompass all of the elements of a claim for tortious interference with a business relationship. Thus, a claim for interference with a business relationship was properly before the jury.
 {¶ 40} AFC argues that it should have been granted a directed verdict/JNOV on this claim because its actions were justified. A defendant is only liable for tortious interference if its interference was improper. Fred Siegel Co., L.P.A. v. Arter Hadden,85 Ohio St.3d 171, 1999-Ohio-0260, at paragraph two of the syllabus. "In determining whether an actor has acted improperly in interfering with a contract or prospective contract of another, consideration should be given to the following factors: (a) the nature *Page 10 
of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties." Id. at paragraph three of the syllabus.
 {¶ 41} Christopher bore the burden of proving that AFC's action in sending the letter to Greenwood was improper, but failed to meet that burden. AFC believed it had the original title to the vehicle and notified Greenwood of its interest in the vehicle at the soonest possible moment. It sent a letter to someone who had possession of a vehicle in which AFC believed it had a security interest and notified the possessor that AFC believed that something fraudulent happened somewhere in the chain of title. The interest that this interfered with was Greenwood's ability to sell that vehicle and the interest advanced was AFC's ability to claim an interest in that vehicle. AFC was fully justified in this attempt to protect its alleged property rights and Christopher has not introduced any evidence that AFC was acting improperly when it sent that letter.
 {¶ 42} Since AFC's actions were justified, it cannot be found liable for tortious interference. Accordingly, the trial court also erred when it failed to grant AFC judgment on this claim as well. AFC's first assignment of error is with merit.
 Remaining Assignments of Error {¶ 43} In its other four assignments of error, AFC argues:
 {¶ 44} "The trial court erred to the prejudice of AFC in entering judgment on damage awards that are speculative, based on inadmissible evidence and that did not satisfy applicable legal standards."
 {¶ 45} "The trial court erred to the prejudice of AFC in entering a duplicative damage award."
 {¶ 46} "The trial court erred to the prejudice of AFC in failing to instruct the jury on the proper standard regarding duplicate titles."
 {¶ 47} "The trial court erred to the prejudice of AFC in awarding prejudgment *Page 11 
interest."
 {¶ 48} Any error in the jury instructions, damages awards, or prejudgment interest are moot given our conclusion that the trial court should have granted JNOV to AFC on the two claims which the trial court allowed to go to the jury.
 Conclusion {¶ 49} It is truly unfortunate that Christopher lost his business and reputation in the automobile dealership market as the result of the events out of which this lawsuit arose. But the fact that something unfortunate happened to Christopher does not mean that AFC is responsible for compensating Christopher for his losses. There is no proof that AFC acted improperly in this case when it sent the letter to Greenwood. Therefore, the judgment against AFC cannot be allowed to stand. Accordingly, for all these reasons, the judgment of the trial court is reversed and judgment notwithstanding the verdict is granted to Automotive Finance Corporation on all outstanding claims.
 Vukovich, J., concurs. Waite, J., concurs. *Page 1