**SHRIVER et al., Plaintiffs,**

v.

**WARMAN et al., Defendants.**

2009-Ohio-7181.]

Court of Common Pleas of Ohio,
Clermont County.

No. 2007 CVC 1194.

Decided Oct. 8, 2009.

8

Suellen Brafford, for plaintiffs.

Freund, Freeze & Arnold and Timothy B. Schenkel, for defendant Charles Warman.

HADDAD, Judge.

{¶ 1} This matter came before the court on May 29, 2009, pursuant to a motion for summary judgment filed by the defendant, Charles Warman.[1] Attorney Suellen Brafford represented the plaintiffs and attorney Timothy Schenkel represented the defendant, Charles Warman.[2] Upon hearing oral arguments on the motion, the court took the matter under advisement, and now renders the following decision.

## FINDINGS OF FACT

{¶ 2} On or about April 21, 2007, the defendant sent an electronic mail ("e-mail") message to the mayor of the village of Moscow, Timothy Sutter. In this message, the defendant used terms such as "low moral values" and "no integrity." He also used such terms as "hypocrites" and "Liars and Thief's." [3] Additionally, he alleges in the letter that some of the "Liars and Thief's" are "just to stoned" or "not smart enough." [4]

{¶ 3} In this case, the plaintiffs are alleging that the statements made by the defendant constitute libel per se. The plaintiffs allege that this electronic message libelously stated that they were engaged in criminal activity and have low moral values and a lack of integrity. They also allege that the electronic message libelously stated that the plaintiffs are liars and hypocrites and are unintelligent. The plaintiffs claim that the defendant published this information to individuals other than the mayor by placing copies for public consumption at city council meetings and by allowing copies to be placed on cars in the community. The plaintiffs are alleging, therefore, that the defendant's actions constitute libel per se in that they falsely state criminal activity as a fact. Further, they allege that the defendant's actions have injured their reputation among the community, as well as their abilities to conduct business. It is the

---

1. The court notes that the defendant is now deceased. A suggestion of death was filed by the defendant's attorney on September 17, 2009, indicating that the defendant died on September 1, 2009.

2. The defendant, Spear USA, L.L.C., d.b.a. Spear System, was dismissed from this action on April 11, 2008, pursuant to a notice of partial dismissal filed by the plaintiffs. Warman is the sole defendant remaining in this case.

3. For purposes of this decision, the court will not correct any misspellings found in the defendant's letter.

4. For purposes of this decision, the court will not correct any grammatical errors that appear in the defendant's statements.

plaintiffs' contention that the defendant acted knowingly, maliciously, and with the goal of injuring their professional and personal reputations.

## THE LEGAL STANDARD

{¶ 4} In considering a motion for summary judgment, the court should review the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact. Civ. R. 56(C). Summary judgment is proper when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. See also *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201. The party requesting summary judgment bears the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Harless* at 66, 8 O.O.3d 73, 375 N.E.2d 46; *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292–293, 662 N.E.2d 264. In determining whether a genuine issue of material fact exists, the court must answer the following inquiry: "Does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law?" *Wilson v. Maple,* Clermont App. No. CA2005–08–075, 2006-Ohio-3536, 2006 WL 1880505, at ¶ 18. The moving party must specifically point to evidence that affirmatively demonstrates that the nonmoving party has no evidence to support its claim. *Dresher* at 293, 662 N.E.2d 264.

{¶ 5} Once the moving party satisfies its burden, "the nonmoving party may not rest on the mere allegations of his pleading, but his response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing the existence of a genuine triable issue." Civ. R. 56(E); *Mootispaw v. Eckstein* (1996), 76 Ohio St.3d 383, 385, 667 N.E.2d 1197. "Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously with any doubts resolved in favor of the nonmoving party." *Parmore Group v. G & V Invests., Ltd.*, Franklin App. Nos. 05AP–756, 06AP–1106, 2006-Ohio-6986, 2006 WL 3825259, ¶ 10. See also *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 359, 604 N.E.2d 138.

## LEGAL ANALYSIS

{¶ 6} "Summary judgment is appropriate in defamation actions because the determination of whether words are defamatory is a question of law to be decided by the court." *Heidel v. Amburgy,* Warren App. No. CA2002–09–092, 2003-Ohio-

3073, 2003 WL 21373164, ¶ 11, citing *Vail v. Plain Dealer Publishing Co.* (1995), 72 Ohio St.3d 279, 280, 649 N.E.2d 182. In order to survive, "the plaintiff must make a sufficient showing of the existence of every element essential to his or her case." Id.

{¶ 7} Defamation is defined as "the unprivileged publication of false and defamatory matter about another." *Heidel,* 2003-Ohio-3073, 2003 WL 21373164, at ¶ 30. "Generally, the essential elements of a defamation action, whether slander or libel, are that 'the defendant made a false statement, that the false statement was defamatory, that the false defamatory statement was published, that the plaintiff was injured and that the defendant acted with the required degree of fault.' " Id. at ¶ 14, quoting *Celebrezze v. Dayton Newspapers, Inc.* (1988), 41 Ohio App.3d 343, 346–347, 535 N.E.2d 755. "Defamatory matter is defined as that which is injurious to another's reputation." Id., citing *Gertz v. Robert Welch, Inc.* (1974), 418 U.S. 323, 345–346, 94 S.Ct. 2997, 41 L.Ed.2d 789. "[T]he plaintiff's prima facie case is made when he has established a publication to a third person for which defendant is responsible, the recipient's understanding of the defamatory meaning, and its actionable character." Id., citing *Hahn v. Kotten* (1975), 43 Ohio St.2d 237, 243, 72 O.O.2d 134, 331 N.E.2d 713.

{¶ 8} "A defamatory statement expressed in a writing, a picture, a sign, or an electronic broadcast is considered libel." *Wilson v. Harvey,* Cuyahoga App. No. 85829, 164 Ohio App.3d 278, 2005-Ohio-5722, 842 N.E.2d 83, ¶ 17. Libel is defined as a " ' "false written publication, made with some degree of fault, reflecting injuriously on a person's reputation, or exposing a person to public hatred, contempt, ridicule, shame, or disgrace or affecting a person adversely in his trade, business or profession." ' " Id., quoting *Stokes v. Meimaris* (1996), 111 Ohio App.3d 176, 184, 675 N.E.2d 1289, quoting *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council* (1995), 73 Ohio St.3d 1, 7, 651 N.E.2d 1283.

{¶ 9} "There are two types of defamation claims: defamation per se and defamation per quod." *Whiteside v. Williams,* Madison App. No. 2006-06-021, 2007-Ohio-1100, 2007 WL 740864, ¶ 4. More specifically, "Ohio recognizes two actionable types of libel: libel per se and libel per quod." *Wilson,* 164 Ohio App.3d 278, 2005-Ohio-5722, 842 N.E.2d 83, at ¶ 18, citing *Stokes,* 111 Ohio App.3d at 184, 675 N.E.2d 1289. " 'Libel per se' is defined as something actionable in itself, i.e., it is libel by the very meaning of the words used." Id. at ¶ 19. When libel per se is alleged, damages and malice are presumed and need not be proven. Id. When libel (defamation) per quod is alleged, damages are not presumed and the complaint must allege special damages. *Whiteside* at ¶ 4.

{¶ 10} "To be libelous per se words must be of such a nature that courts can presume as a matter of law that they tend to degrade or disgrace the person of whom they are written or spoken, or hold him up to a public hatred, contempt or scorn." *Moore v. P.W. Publishing Co.* (1965), 3 Ohio St.2d 183, 188, 32 O.O.2d 179, 209 N.E.2d 412. "Libel per quod may occur where a publication, which, of itself, or per se, is not libelous, becomes so by the use of an innuendo rendering the apparently harmless words into libelous ones by extrinsic evidence or, is said, aliunde, as distinguished from per se." Id. A statement does not constitute libel per se unless it "consist[s] of words which import an indictable criminal offense involving moral turpitude or infamous punishment, imputes some loathsome or contagious disease which excludes one from society or tends to injure one in his trade or occupation." *Heidel,* 2003-Ohio-3073, 2003 WL 21373164, at ¶ 30, quoting *McCartney v. Oblates of St. Francis deSales* (1992), 80 Ohio App.3d 345, 353, 609 N.E.2d 216. See also *Wilson,* 164 Ohio App.3d 278, 2005-Ohio-5722, 842 N.E.2d 83, at ¶ 20, quoting *Williams v. Gannett Satellite Information Network, Inc.,* 162 Ohio App.3d 596, 2005-Ohio-4141, 834 N.E.2d 397, at ¶ 8.

{¶ 11} However, in Ohio, a statement is not defamatory unless it is a statement of fact rather than one of opinion. *Heidel,* 2003-Ohio-3073, 2003 WL 21373164, at ¶ 15, citing *Vail,* 72 Ohio St.3d at 281, 649 N.E.2d 182. Therefore, the court need not address whether the defendant's statements are libel per se or libel per quod if they are not actionable as defamation in the first instance.

{¶ 12} Section 11, Article I of the Ohio Constitution provides: "Every citizen may freely speak, write, and publish his sentiments on all subjects, being responsible for the abuse of the right; and no law shall be passed to restrain or abridge the liberty of speech, or of the press." "The Ohio Constitution's separate and independent protection for opinions, recognized in *Scott v. News–Herald* [ (1986), 25 Ohio St.3d 243, 25 OBR 302, 496 N.E.2d 699,] and reaffirmed in *Vail v. Plain Dealer Publishing Co.,* is not limited in its application to the allegedly defamatory statements made by media defendants. A nonmedia defendant whose allegedly defamatory statements appear in a letter to the editor may invoke the same protection, which may or may not apply depending on the totality of the circumstances." *Wampler v. Higgins* (2001), 93 Ohio St.3d 111, 752 N.E.2d 962, syllabus. In other words, the Ohio Constitution "guarantees to 'every citizen' the right to publish freely his or her sentiments on all subjects, regardless of that citizen's association or nonassociation with the press." Id. at 121, 752 N.E.2d 962.

{¶ 13} Whether the statement is one of fact or of opinion is a question of law for the court to decide. *Heidel,* 2003-Ohio-3073, 2003 WL 21373164, at

¶ 15, citing *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 372, 6 OBR 421, 453 N.E.2d 666. In making this determination, the courts use a "totality of the circumstances" test. *Scott v. News–Herald,* 25 Ohio St.3d 243, 25 OBR 302, 496 N.E.2d 699, paragraph one of the syllabus, overruling *Milkovich v. News–Herald* (1984), 15 Ohio St.3d 292, 473 N.E.2d 1191; *Heidel,* 2003-Ohio-3073, 2003 WL 21373164, at ¶ 15, citing *Vail,* 72 Ohio St.3d at 281, 649 N.E.2d 182. This test comprises four parts: (1) the specific language used; (2) whether the statement is verifiable; (3) the general context within which the statement is made; and (4) the broader context within which the statement appeared. *Scott,* at 250, 496 N.E.2d 699; *Heidel,* 2003-Ohio-3073, 2003 WL 21373164, at ¶ 15; *Vail,* 72 Ohio St.3d 279, 649 N.E.2d 182, at the syllabus. "This analysis is not a bright-line test, but does establish parameters within which each statement or utterance may stand on its own merits rather than be subjected to a mechanistic standard." *Vail* at 282, 649 N.E.2d 182. This totality-of-the-circumstances test " 'can only be used as a compass to show general direction and not a map to set rigid boundaries.' " Id., quoting *Scott,* 25 Ohio St.3d at 250, 25 OBR 302, 496 N.E.2d 699. "Furthermore, the standard must be fluid. Every case will present facts that must be analyzed in the context of the general test. Each of the four factors should be addressed, but the weight given to any one will conceivably vary depending on the circumstances presented." Id. Additionally, "[a]ll four factors of Ohio's test for distinguishing a statement of fact from an opinion depend on the reasonable reader's perception of the statement—not on the perception of the publisher." *McKimm v. Ohio Elections Comm.* (2000), 89 Ohio St.3d 139, 144, 729 N.E.2d 364, citing *Vail,* 72 Ohio St.3d at 282–283, 649 N.E.2d 182. Otherwise, the author could escape liability by advancing a harmless, subjective interpretation of the statements made. Id. at 145, 729 N.E.2d 364.

{¶ 14} *Part 1: Specific Language Used.* In making a determination under the first part of the test, the court must consider whether the language used " 'lacks precise meaning and would be understood by the ordinary reader for just what it is—one person's attempt to persuade public opinion.' " *Heidel,* 2003–Ohoi–3073, at ¶ 20, quoting *Vail,* 72 Ohio St.3d at 282–283, 649 N.E.2d 182. If the language is loosely definable or may be interpreted in various ways, that language will generally not support a cause of action for defamation. Id., citing *Wampler,* 93 Ohio St.3d at 129, 752 N.E.2d 962. The main concern is with the common meaning of the statement. *Scott,* 25 Ohio St.3d at 250, 25 OBR 302, 496 N.E.2d 699. Further, specific allegations of criminal conduct are potentially actionable; however, the distinction is not easily made in all cases. Id.

{¶ 15} The language alleged as defamatory in this case is "low moral values," "no integrity," "hypocrites," "Liars and Thief's," "to stoned," and "not smart enough." The court will begin with the terms "low moral values," "no integrity,"

"hypocrite," and "not smart enough." The court finds that these terms lack precise meaning and would be understood by the ordinary reader as the defendant's attempt to persuade the public opinion about the issues discussed in the e-mail. Because the language is loosely definable and could be interpreted in various ways depending upon what the ordinary reader deems to constitute "low moral values," "no integrity," "hypocrite," or "not smart enough," that language will not support a cause of action for defamation.

{¶ 16} Additionally, the defendant uses the term "to stoned" in the e-mail message. The court notes that "stoned" has varying definitions. It could mean that those individuals listed are under the influence of alcohol or it could mean that they are under the influence of drugs. The court finds that this language is not complimentary to the plaintiffs and that it could lead the ordinary reader to believe that they, in fact, do abuse either alcohol or drugs. Therefore, construing the evidence most strongly in favor of the plaintiffs, the court finds that the term "to stoned" could be interpreted as a factual statement that the plaintiffs abuse either alcohol or drugs.

{¶ 17} The defendant also uses the terms "Liars and Thief's." The common meaning of the term "liar" is a person who tells lies, or is untruthful. The court finds that a person reading the defendant's statement would likely interpret the language to mean that the individuals listed were untruthful about something. Further, the term "thief's" connotes that the individuals listed were involved in criminal activity, i.e., stealing. Therefore, the court finds that the ordinary reader would likely interpret these terms to mean that those individuals mentioned in the e-mail were untruthful and were involved in some type of criminal activity.

{¶ 18} Based upon the foregoing analysis, the court finds that the terms "low moral values," "no integrity," "hypocrite," and "not smart enough" would likely be interpreted by the ordinary reader as the defendant's opinion and thus are not actionable. However, the term "to stoned" could be interpreted by the ordinary reader as a factual statement that the plaintiffs abuse drugs and/or alcohol. Further, the term "Liars and Thief's" could be interpreted as a factual statement that the plaintiffs are untruthful and engage in criminal activity. Therefore, construing the evidence most favorably for the plaintiffs, the court finds that the terms "to stoned" and "Liars and Thief's" are actionable under the first prong of the four-part test.

{¶ 19} *Part 2: Whether the Statement Is Verifiable.* When the author of a statement makes a representation that he has private and firsthand knowledge substantiating the statement of opinion, the statement of opinion becomes as damaging as a statement of fact. *Scott,* 25 Ohio St.3d at 251, 25 OBR 302, 496 N.E.2d 699. However, if the statements lack a plausible method of verification,

the reasonable reader will not interpret the statement as containing specific factual content. Id. at 251–252, 25 OBR 302, 496 N.E.2d 699.

{¶ 20} The court finds that the defendant did not assert in the e-mail message that he had private, firsthand knowledge that would substantiate any of his statements. Further, there is no plausible method of verifying whether someone has "low moral values," has "no integrity," is a "hypocrite," or is "not smart enough." Additionally, there is no plausible method of verifying whether someone is "to stoned." While there are tests to determine whether a person is stoned, i.e., under the influence of drugs or alcohol, there is simply no way to determine whether that person is *too* stoned to do something required of them. Finally, there is no plausible method of determining whether a person is a liar. Therefore, the second prong of the four-part test leads to the conclusion that the statements regarding whether the plaintiffs have "low moral values," have "no integrity," are "hypocrite[s]," are "not smart enough," are "liars," or are "to stoned" are unverifiable statements of opinion and the ordinary reader would interpret them as such.

{¶ 21} However, the term "thief's" is capable of being verified. An individual's criminal history is a matter of public record and can be verified with court documents. Therefore, while the defendant did not state that he had private, firsthand knowledge that the plaintiffs are thieves, he did make a statement that has a plausible method of verification. Therefore, the statement that the plaintiffs are thieves is verifiable and could be interpreted by the ordinary reader as a statement of fact.

{¶ 22} *Part 3: The General Context.* The third factor requires the court to analyze the larger objective and subjective context of the statement. *Scott,* 25 Ohio St.3d at 252, 25 OBR 302, 496 N.E.2d 699. Under this prong of the test, the court will consider the "immediate context" in which the statement appears. *Wampler,* 93 Ohio St.3d at 130, 752 N.E.2d 962. "Objective cautionary terms, or 'language of apparency,' places a reader on notice that what is being read is the opinion of the writer." *Scott* at 252, 25 OBR 302, 496 N.E.2d 699. "Terms such as 'in my opinion' or 'I think' are highly suggestive of opinion but are not dispositive, particularly in view of the potential for abuse." Id. The court must not consider the alleged defamatory statement in isolation because the surrounding language may place the reasonable reader on notice that the statement is one of opinion rather than fact. *Wampler,* at 130, 752 N.E.2d 962.

{¶ 23} The immediate context within which all the defendant's statements appear is a letter to the mayor of the village of Moscow. In this letter, the defendant speaks in the first person throughout, an indication that he is expressing his own personal opinions. Further, upon reading the entire e-mail message as a whole, the ordinary reader would find that the defendant is simply express-

ing his disdain for the elected officials and the community issues. In the letter, the defendant fails to point to objective facts supporting his belief that those individuals named in the e-mail are liars, thieves, hypocrites, etc. The general tenor of the message is sarcastic, an indication that the letter was meant as persuasive rather than factual. The ordinary reader would likely view the statements made in the defendant's message as an attempt to sway the mayor's opinion, as well as the opinion of the readers in the community, about the lawsuits discussed and the issues raised by the defendant. Therefore, the court finds that the third prong of the four-part test leads to the conclusion that the defendant's statements are merely statements of opinion.

{¶ 24} *Part 4: The Broader Context.* The fourth factor involves the broader context within which the statement appeared. There are varying social conventions attached to different types of writing that signal to a reader that the statement is likely one of fact or one of opinion. *Scott,* 25 Ohio St.3d at 253, 25 OBR 302, 496 N.E.2d 699. In examining the broader context, the court must look to the type of article and where it is found to determine how those factors would influence the reader's view on whether the statements contained therein are fact or opinion. Id. This factor focuses on the influence that "well established *genres* of writing will have on the average reader" and not merely on the internal context of the writing itself. *Wampler,* 93 Ohio St.3d at 131, 752 N.E.2d 962.

{¶ 25} The broader context within which the defendant's statements appear is an e-mailed letter that the defendant sent to the mayor and disseminated to the community later. While it does not appear in a newspaper, the court finds that this letter is no different from a letter to the editor. It is merely a letter that was meant to cause outrage in the reader. The letter directly addressed the reader, i.e., the mayor, and expressed outrage for a "TV spot" that the mayor approved rather than a "man to man" conversation. While it was not published in a newspaper, it was disseminated to the community as a flyer. The defendant clearly wanted the community to know his opinions about the mayor's and council members' actions, but it is unlikely that the ordinary reader in the community would have accepted the statements as facts. Therefore, the court finds that the ordinary reader would view this letter as one stating an opinion.

{¶ 26} *The Totality of the Circumstances.* Based upon the totality of the circumstances, the court finds that the ordinary reader would accept the defendant's statements as opinion rather than fact. While some of the factors of the four-part test weighed in favor of *fact*, the test is considered fluid, and the weight of any given factor changes based upon the circumstances of the case. The court finds that some of the factors tended to support the conclusion that the statements were factual, but the other factors weighed more strongly in favor of

opinion. Therefore, having construed the evidence in a light most favorable to the plaintiff, the court finds that there is no genuine issue of material fact remaining. Reasonable minds can come to but one conclusion and that conclusion is that the defendant's statements were statements of opinion and are not actionable as defamation; thus, the defendant is entitled to judgment as a matter of law. Having found that the alleged defamatory statements are merely the defendant's opinion, and thus protected under the Ohio Constitution, the court need not address the specific elements of a libel claim.

{¶ 27} The court would note that the plaintiffs argue in their response to the motion for summary judgment that the defendant attached the wrong e-mail message to his motion. However, the court finds that while the message is different, the statements that are alleged to have been defamatory are the same, and the general context of the message is the same. Further, the defendant has stated that he is not basing his argument on the earlier message attached to his motion, but instead attached that message in order to comply with the best-evidence rule. His argument in the motion for summary judgment is clearly premised upon the e-mail message attached to the complaint; therefore, the court finds that it is not relevant to this decision whether the defendant attached a separate e-mail message to his motion.

{¶ 28} On a final note, the court wishes to point out that it considers the language used by the defendant to be uncomplimentary and understands why the plaintiffs took offense to it. However, the court is required to make its determination based upon legal grounds and cannot allow its personal views to affect its decision. Therefore, while the court is sympathetic to the plaintiffs' concerns on this issue, it simply cannot disregard that the statements made by the defendant were, by law, his opinion.

## CONCLUSION

{¶ 29} Based upon the foregoing analysis and the competent, credible evidence before the court and having construed the evidence most strongly in favor of the plaintiffs, the court finds that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Reasonable minds can come to but one conclusion, and that conclusion is adverse to the plaintiffs; thus, the defendants motion for summary judgment is well taken and is hereby granted.

So ordered.